**Almon A. HEATH, Plaintiff-Appellee,**

v.

**A. B. DICK COMPANY, an Illinois corporation, Defendant-Appellant.**

**No. 12122.**

United States Court of Appeals
Seventh Circuit.

Feb. 24, 1958.

Rehearing Denied March 31, 1958.

As Amended April 22, 1958.

Casper William Ooms, John T. Haslett, Chicago, Ill., Herman Hersh, David L. Ladd, Chicago, Ill., of counsel, for appellant.

George E. Frost, Chicago, Ill., for appellee.

Before MAJOR, SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This case was initiated on August 9, 1954 when plaintiff filed a complaint in the district court. On September 21, 1955, it filed a "substitute complaint" (hereinafter referred to as the complaint) to which, the record before us rather obscurely suggests, defendant's amended answer and counterclaim filed December 28, 1954 is the responsive pleading. On March 22, 1955 plaintiff filed an answer to an amended (sic) counterclaim.

The cause, tried without a jury, resulted in a judgment for plaintiff, and defendant has appealed. The record includes the pleadings, oral testimony, and documentary evidence, as well as answers to interrogatories and a response to request for admissions.

The complaint expressly declares upon an action for breach of contract. It alleges, inter alia, that plaintiff is the owner of United States patent 2,203,280 and Canadian patent 409,099, issued to him as inventor on June 4, 1940 and December 8, 1942, respectively.

It is alleged in the complaint and admitted by defendant's answer that, under date of April 30, 1948, defendant's general counsel sent to plaintiff a letter, which reads:

"Dear Mr. Heath:

"As General Counsel for A. B. Dick Company, I am writing you in the interest of that Company regarding U. S. Letters Patent No's 1,989,922 and 2,203,280 issued to you.

"I have carefully reviewed all litigation in connection with these patents including the matter of Heath v. Frankel (9th Circuit Court of Appeals), 153 F.2d 369, decided January 15, 1946, petition for rehearing denied February 26, 1946, writ of certiorari denied May 13, 1946. According to the official records in connection with this suit, Patent No. 1,989,922 was held invalid as to all claims and Patent No. 2,203,280 was held invalid as to all claims except 11, 14, 16 and 17. I am advised that thereafter you disclaimed all of the invalidated claims of Patent No. 2,203,280. It is my understanding that you have not disclaimed your rights under claims 11, 14, 16 and 17.

"A. B. Dick Company is interested in obtaining from you a non-exclusive license to make or have made products in accordance with these patents and, of course, is willing to pay a reasonable royalty fee for such a license. Would you, therefore, be kind enough to advise me at your earliest convenience whether you would be interested in granting to A. B. Dick Company a non-exclusive license on a reasonable royalty basis and what figure you have in mind as to a reasonable royalty fee.

"With kind regards, I am
"Very truly yours,
"/s/ John T. Haslett."

and that, under date of May 25, 1948, plaintiff and defendant executed the following agreement:

"Patent License Agreement

"The Agreement made this 25th day of May, 1948 by and between Almon A. Heath of 4311 West 147th Street, Lawndale, California, and A. B. Dick Company of Chicago, Illinois, a corporation of Illinois, hereinafter respectively referred to as Heath and Dick,

"Witnesseth:

"That Whereas Heath warrants that he is the sole owner of United

States Letters Patent No. 2,203,280, and Canadian Letters Patent No. 409,099 for stencil film and relating to the stencilization of stencil sheets; and

"Whereas Dick desires to secure a non-exclusive license to manufacture, sell, and use inventions under said patents throughout the United States, Canada and territories thereof, including sales for export,

"Now, Therefore, It Is Agreed by and between the parties hereto as follows:

"1. Heath Hereby grants to Dick a non-exclusive license under the aforesaid patents relating to the stencilization of stencil sheets, to make, use and sell articles, or products embodying said inventions, throughout the United States, Canada and territories thereof, including sales for export.

"2. Dick hereby agrees to pay Heath at his place of business at Lawndale, California, or other places hereafter designated by him, a royalty of ten cents (10¢) per pound of the film material used in the stencilization of stencil sheets under this license. Royalty fees shall be paid quarterly. The first payment under this license shall be made July 1, 1948, and payments shall continue thence on a quarterly basis for the term of this Agreement.

"3. After June 4, 1957, Dick shall have the full and unrestricted right to use the inventions herein licensed without the payment of any further royalties.

"4. Should Claims No's 11, 14, 16 and 17 of the Heath Patent No. 2,203,280 be held invalid by a final decree, or by a decree as accepted final by Heath, then Dick shall be under no obligation to pay royalties.

"5. In the event that Dick does not pay its royalties when due, Heath shall have the right to cancel the contract upon giving sixty (60)-day notice, provided that the default is not cured within sixty (60)-days after receipt of such notice.

"6. This Agreement shall be binding as to all parties hereto and to their heirs, legal representatives, successors and assigns.

"7. The term of this Patent License Agreement shall be for the duration of Heath Patent No. 2,203,280."

The complaint further alleges that thereafter defendant did manufacture stencils with protective film of the kind for which royalties were due under the agreement and that defendant paid plaintiff as royalties $13,963.82, for the period from July 1, 1948 to March 31, 1953.

The complaint further alleges that by letter dated June 4, 1953 defendant notified plaintiff that the license agreement between them was to be canceled, but that plaintiff has insisted at all times that the agreement is in full force and effect and that defendant is obligated to pay royalties in accordance therewith.

It is further alleged in the complaint that since March 31, 1953 defendant has continued to manufacture the same product as it did prior to March 31, 1953 and that royalties are due to plaintiff for such manufacture after March 31, 1953, payment of which has been refused, wherefore plaintiff demands judgment.

By its amended [1] answer, defendant, insofar as the issues in controversy in this court are concerned, admits the sending of the letter of April 30, 1948, and the execution of the agreement, but denies its breach, denies that, after the execution of the agreement, it manufactured stencils with protective film of the kind for which royalties were due under the agreement, and sets forth that the "only protective films combined with stencils manufactured, used and sold by Defendant constitute protective

---

1. Hereinafter referred to as "answer".

films formed of pliofilm (rubber hydrochloride) originally specifically covered by claims 6, 7, 8, 9, 10 and 13 of Plaintiff's patent No. 2,203,280, which have been held invalid and which have been disclaimed by Plaintiff."

It further avers that, in Heath v. Frankel, 9 Cir., 1946, 153 F.2d 369, claims 6, 7, 8, 9, 10 and 13 of patent 2,203,280 were held invalid, which claims specifically covered the pliofilm protective films for stencils manufactured by defendant after May 25, 1948. It also avers that, because of the opinion in Heath v. Frankel, prior to May 25, 1948 plaintiff disclaimed said claims in the Patent Office, and that

"All stencil and protective film assemblies which have been or are being made, used and sold by Defendant constituted or constitute elements which Plaintiff expressly and publicly disclaimed as his invention and were and are free to be made, sold and used by anyone without infringement of claims 11, 14, 16 and 17 of the Heath patent No. 2,203,280 or the corresponding claims of the Canadian patent No. 409,099."

While defendant's answer admits having paid plaintiff $13,963.82, it denies that is was forthcoming to plaintiff under the license agreement and states that it

"was made under a mistake of fact attributable chiefly to departmentalization of Defendant, since the stencil and protective film assemblies made, used and sold by Defendant are not of the type covered by claims 11, 14, 16 and 17 of the Heath patent No. 2,203,280, but are of the type expressly disclaimed by Plaintiff from his patent, wherefore no royalty payments have been or are due and owing to Plaintiff under the agreement, and the sum of $13,-963.82 mistakenly forwarded to Defendant should rightfully be returned."

In its answer defendant explains the letter of cancellation by saying that it was sent because defendant had not since May 5, 1948 practiced the invention covered by claims 11, 14, 16 and 17 of the United States patent or the corresponding claims of the Canadian patent, and that by its letter it intended to notify plaintiff that it had not, previous to June 4, 1953, practiced the invention assertedly covered by said claims 11, 14, 16 and 17 and that it would not in the future practice the alleged invention as so defined.

Defendant's answer admits that it has manufactured the same product subsequently to March 31, 1953 as before that date. It also alleges that products covered by claims 11, 14, 16 and 17 were never adopted by defendant for manufacture, use or sale, and its products have been limited to the use of pliofilm as the protective film for stencil sheets, which plaintiff "has expressly disclaimed as his invention".

By its amended counterclaim defendant seeks return of the royalties paid by it to plaintiff.

■■ The judgment of the district court sustained the complaint, assessed plaintiff's damages at $45,680.53, awarded costs to plaintiff and dismissed the counterclaim.

1. In its brief, defendant contends that the

"elementary rule is that the obligations of a contract shall be determined from its face unless an ambiguity appears. Plaintiff nowhere specifies any ambiguity which might justify resort to speculative inferences. Therefore, the rule as stated in Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 164 F.2d 290, 292–293 applies:

" 'The object of construction is to ascertain the intention which the parties have expressed in the language of their contract, and where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties. Where a written contract purports on its face to be a complete

expression of the whole agreement it is presumed that the parties introduced into it every material item and term, and in construing it, no words can be added to the contract so as to change the plain meaning of the parties as expressed therein.' "

We agree. For that reason much evidence as to the statements and acts of the parties prior, as well as subsequent, to the execution of the agreement, we find it unnecessary to set forth or consider.

2. Inasmuch as there is some discussion in the briefs in reference to whether defendant infringed plaintiff's patent rights, at the outset it should be pointed out that this is a suit upon a contract and is not a suit for infringement of a patent. Whatever rights the parties have in this case are derived from the contract. Infringement of a patent is a tort or wrong; it is a trespass on the property rights of the patentee, or at least it is analogous to a trespass. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398; Faulkner v. Gibbs, 9 Cir., 199 F.2d 635, 638; 69 C.J.S. Patents § 282, p. 842.

3. References to patent 2,203,-280 reveal that it relates to the cutting of stencils of the type now commonly employed in duplicating machines.

Claim 16 reads:

"16. In combination, a stencil sheet upon which pervious areas may be formed by the application of pressure, and without perforating the sheet, a tenuous film overlying said sheet having a large degree of permanent extensibility, and a backing sheet below said stencil sheet and formed of extensible material."

Claim 18, which was disclaimed by plaintiff on October 7, 1946, reads:

"18. In combination, a stencil sheet upon which pervious areas

may be formed by the application of pressure, and without perforating the sheet, a tenuous film overlying said sheet having a large degree of permanent extensibility, and a backing sheet below said stencil sheet and including a cushioning layer."

Defendant's product, known as plaintiff's exhibit 3,[2] upon which it paid royalties to plaintiff under the license agreement of May 25, 1948 is an assembly to be used by a typist and consists of a mimeograph stencil sheet over which is attached and laid a top sheet, and below which are attached a cushion sheet and a backing sheet, in that order.

4. The license was obtained by defendant pursuant to a request which its general counsel made to plaintiff in his letter of April 30, 1948. When that letter was written, the legal status of plaintiff's patents, including U. S. patent 2,203,280 had already been adjudicated in Heath v. Frankel, supra, to which the letter expressly referred, and plaintiff had already disclaimed all of the invalidated claims of said patent. The letter expressly stated that no disclaimer of plaintiff's rights under claims 11, 14, 16 and 17 had been made. The execution of the license agreement and the subsequent payment of royalties thereunder for about five years indicate that defendant, fully aware of its legal rights and on its own initiative, procured from plaintiff the right to make and market its stencil assembly. Defendant makes no charge of deception, fraud, or coercion on the part of plaintiff surrounding the execution of the agreement. Defendant's general counsel was evidently convinced that, to avoid liability as an infringer, or at least to avoid litigation involving a charge of infringement, it was good business for defendant to procure the license in question. By so doing, defendant became free to produce its assembly without fear of litigation with plaintiff. When it procured the license from plain-

2. Vice-president Roshkind of defendant testified that under the agreement with plaintiff royalties were paid to him for stencils like plaintiff's exhibit 3, which was not in manufacture prior to May 25, 1948, and that there was no change in said exhibit on or about June 4, 1953.

tiff, defendant bought its peace. That it would thus serve the interests of defendant, was undoubtedly its best judgment.[3] About five years later one of defendant's officers took a different view and decided that defendant did not need and never had needed a license from plaintiff. Upon his determination of what was good for defendant then, as well as in 1948, defendant undertook to cancel an agreement which contained no express right of cancellation and which, by its terms, was not to expire until the expiration of the patent. The question as to whether defendant actually needed the license in 1948 was one for it to determine at that time. By its general counsel it expressed such determination in 1948, and, as a result, had freedom from litigation and the use of license rights for five years before someone in its organization decided, in effect that it had never needed a license from plaintiff. If a person decides that he needs a brown hat and he thereupon goes to a store and buys it, pays for it and wears it, no one would make the absurd contention that he would have a right to refuse to pay for the hat, or, if he had already paid for it, to recover the purchase price from the store owner, because he had since decided that he did not need the hat and had not needed it when he bought it. We cannot sustain the defense based upon the 1953 decision of one of defendant's officers that defendant never had

any need for the license which it asked for and procured from plaintiff in 1948.

Whether or not plaintiff's disclaimer of claim 18 of his patent left no other claim thereof upon which defendant's product could be read, as now argued by defendant's counsel, is irrelevant and need not be decided by us. Simply stated, defendant got the license for which it contracted in 1948 and it has no escape from its contractural obligation to pay plaintiff for it.

■■ Actually defendant has neither alleged in its answer or proved by evidence *what* mistake of fact occurred, as referred to in the answer, 253 F.2d 33. Moreover, it appears from its argument in this court that, if there was a mistake at all, it was a mistake of law in considering claim 16 of the Heath patent. Of course, it is elementary that a mistake of law is no ground for rescission of a contract. 17 C.J.S. Contracts § 145, p. 500. Moreover, even if a mistake of fact existed, it is likewise elementary that it would not be the basis for the rescission of a contract unless the mistake were mutual to the parties to the agreement. 17 C.J.S. Contracts § 143, pp. 495–497.

For these reasons, we are of the opinion that the district court, by its judgment, reached the proper result. The judgment is affirmed.

Affirmed.

---

3. The interpretation which we have placed upon the actions of the defendant is consistent with the findings of the district court, which we find to be supported by substantial evidence in the record and which are, therefore, not clearly erroneous. We agree with them and, even if we did not, we have no right to disregard them. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.