Charles E. ORTMAN, Jr., Plaintiff-
Appellee,

v.

STANRAY CORPORATION, Defendant-
Appellant.

No. 15664.

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1967.

Patrick H. Hume, Chicago, Ill., Richard G. Lione, Hume, Groen, Clement & Hume, Sabin C. Bronson, Chicago, Ill., of counsel, for appellant.

Martin Faier, Chicago, Ill., John A. Wright, Chicago, Ill., of counsel, for appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

DUFFY, Senior Circuit Judge.

The complaint herein contains five causes of action: 1) for alleged infringement of United States Patent No. 3,103,-736; 2) in contract, for alleged breach and wrongful termination of an assignment agreement pertaining to said patent; and 3, 4 and 5) for alleged infringement of Canadian, Brazilian and Mexican patent rights respectively.

The invention related to a "Cutting Tool and Milling Head Insert Therefor."

It is used for truing metal wheels of the type used on vehicles that operate on metal rails.

Defendant filed two motions. The first motion was to dismiss plaintiff's third, fourth and fifth causes of action for want of jurisdiction of the subject matter, and for failing to present a claim upon which relief could be granted. The second motion was for judgment on the pleadings under Rule 12(c) Federal Rules of Civil Procedure or for summary judgment (Rule 56) as to plaintiff's first and second causes of action. Defendant now states this motion is more appropriately one for summary judgment.

The District Court denied both of defendant's motions, but at the request of defendant, certified under 28 U.S.C. § 1292(b) that a controlling question was presented as to which there is substantial ground for differences of opinion. We allowed this appeal to be taken.

The application for patent that matured into Patent No. 3,103,736 was filed on May 11, 1959. On the same day, plaintiff Ortman entered into a contract with defendant.

Under the contract, plaintiff assigned to defendant the application for United States Patent No. 812,320 filed May 11, 1959 (now Patent No. 3,103,736 in suit). In return, defendant agreed to pay 10% of its net costs for use of the devices disclosed and claimed in Patent No. 3,103,-736 for ten years or for the life of the patent, whichever period was longer; provided, however, that plaintiff Ortman, on thirty days' notice to or from defendant Stanray, would be revested with said patent rights upon Stanray's refusal to make certain payments, or upon its discontinuance of the use of the invention disclosed and claimed in Patent No. 3,103,736.

For a period of more than five years, defendant made payments under the contract but then attempted to terminate the contract on July 5, 1964 by serving on plaintiff a notice of its intention to terminate within thirty days. Patent No. 3,103,736 was promptly reassigned

by defendant to plaintiff, but certain equivalents in Canada, Brazil and Mexico as well as the United States continuation-in-part application that has never issued, were not at that time transferred back.

Upon notice of the instant suit, defendant reassigned the remaining domestic and the foreign patent rights to plaintiff.

Defendant Stanray is a Delaware corporation. Plaintiff Ortman is a resident of Illinois.

■ There can be no question as to the jurisdiction of the District Court as to the first cause of action stated in the complaint which alleged infringement of a United States patent. Such jurisdiction is specifically given in Title 28, U.S.C. § 1338(a).

■ The District Court also had jurisdiction of the second cause of action for alleged breach and wrongful termination of a contract. Diversity of citizenship and the jurisdictional amount are alleged.

Defendant's motion as to the first two causes of action was for summary judgment. Defendant argues that the record before us demonstrates 1) that defendant does not infringe the Ortman patent; 2) that plaintiff is estopped to assert such infringement; 3) if construed to infringe, the Ortman patent is invalidated by defendant's prior use, and 4) defendant is not estopped to limit the scope of the patent or to assert its invalidity.

■ A mere statement of defendant's claims clearly demonstrates that the District Court was correct in denying defendant's motion for summary judgment. There are material issues of fact to be decided. Such a short cut might well be convenient for the defendant, but in our view, is entirely unwarranted in this case.

Apparently defendant contends that the record and exhibits speak for themselves. Pertinent is our recent statement in Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc. (1966),

356 F.2d 442, cert. den. sub. nom. Croname, Inc. v. Technograph Printed Circuits, Ltd., 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547, which was a case for alleged patent infringement where we reversed the District Court which had granted a motion for summary judgment. We there stated, 356 F.2d at page 448: "They may 'speak for themselves' but we feel the need of expert translation and interpretation, screened for us by appearance and demonstration before a trial court."

In *Technograph*, we further pointed out that a court of appeals should not be called upon to decide such issues as were there involved without a trial below.

We recognize that under certain circumstances, the validity of a patent may be determined by use of summary judgment. See A R Inc. v. Electro-Voice, Inc., 7 Cir., 311 F.2d 508, 511; Magee v. Coca-Cola Co., 7 Cir., 232 F.2d 596, 599. In *Magee*, the District Court's opinion stated: "A summary judgment should not, however, be entered except where the defendant is entitled to judgment beyond all doubt, or where the evidence presented in support thereof would compel the direction of a verdict." 17 F.R.D. 10, 11. This statement was quoted with approval in *Technograph*.

We hold the District Court correctly denied defendant's motion for summary judgment.

We now consider the District Court's denial of defendant's motion to dismiss plaintiff's third, fourth and fifth causes of action for want of jurisdiction and for failure to state a claim upon which relief could be granted.

■ Under ordinary circumstances, it would seem clear that plaintiff could not come into a United States District Court and sue for infringement of patents issued by Canada, Brazil and Mexico where such claim is based upon alleged acts of the defendant in each of the foreign countries named.

As a ground for jurisdiction for the third, fourth and fifth causes of action, the complaint sets forth Article 2(1)

of the International Convention for the Protection of Industrial Property of March 20, 1883, as revised at Brussels on December 14, 1900, at Washington on June 2, 1911, at the Hague on November 6, 1925, and at London on June 2, 1934. 53 Stat. 1748, 1772.

The article cited reads:

"Article 2(1). Nationals of each of the countries of the Union shall, in all other countries of the Union, as regards the protection of industrial property, enjoy the advantages that their respective laws now grant, or may hereafter grant, to their own nationals, without any prejudice to the rights specially provided by the present convention. Consequently they shall have the same protection as the latter, and the same legal remedy against any infringment of their rights, provided they observe the conditions and formalities imposed upon nationals."

Plaintiff asks the District Court to "enjoin" defendant from infringing its Canadian, Brazilian and Mexican patents respectively, claiming such relief under the Canadian Patent Act, the Brazilian Property Code and the laws of Mexico relating to Industrial Property.

We first note that in some respects, at least, the International Convention as cited by plaintiff is obsolete, as the Convention was modified by the Lisbon Text of 1958 which was ratified by the United States in 1960 and came into force in 1962. See 13 UST 1 (1962).

■ We hold that plaintiff's reliance on the International Convention as a basis for jurisdiction is misplaced. The International Convention is not self-executing. The ratification of the treaty by the President by and with the advice and consent of the Senate, and without any further action by the Congress, is not sufficient to make the provisions of the Convention a basis for federal jurisdiction.

■ An opinion of the Attorney General of the United States, 19 Ops.Att'y. Gen. 273 (1889) considered the question with reference to the then Article 2 of the International Convention. He said, pages 278–9, "It is a contract operative in the future infraterritorially. It is therefore not self-executing, but requires legislation to render it effective for the modification of existing laws."

In Eli Lilly & Co. v. Brenner, D.D.C. (1965), 248 F.Supp. 402, 432–433, the Court held that "neither the International Convention as a whole, nor any Article or clause thereof, can properly be considered self-executing." The Court further held that to the extent Article 2 had not been implemented " * * * it has the mere status of an unfulfilled national promise."

We think that the foregoing quotations properly state the law, and we hold that the plaintiff cannot rely on the International Convention as a basis for jurisdiction as to the third, fourth and fifth causes of action in this case.

■ To establish jurisdiction as to the third, fourth and fifth causes of action, plaintiff also invokes the doctrine of ancillary jurisdiction. This principle has been defined as follows:

"By this concept it is held that a district court acquires jurisdiction of a case or controversy as an entirety, and may, as an incident to disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented." Wright, Federal Courts, § 9 at p. 17 (1963).

As hereinbefore indicated, 28 U.S.C. § 1338(a) grants jurisdiction as to United States Patent No. 3,103,736, and jurisdiction has also been established to consider the contract question under diversity of citizenship with jurisdictional amount.

The question then is whether, with such jurisdiction established, the District Court has jurisdiction over the claim of alleged infringement of foreign patents as a result of defendant's conduct and actions in foreign countries.

The leading case on the doctrine of ancillary or pendent jurisdiction is Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). This case involved the question of federal jurisdiction over a claim of unfair competition based on state law. There existed in that case, the claim of copyright infringement under federal law. After stating that a federal court, once it acquires jurisdiction of a case, has authority to decide all the questions in the case, the Court said, 289 U.S. at pp. 245–246, 53 S.Ct. at p. 589:

"But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action*."

The Supreme Court again considered the question of pendent jurisdiction in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). After discussing the *Hurn* decision and the controversy over the meaning of "cause of action" the Court said, pages 724–725, 86 S.Ct. page 1138 [footnote omitted]:

" * * * Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies are strongly encouraged. Yet because the *Hurn* question involves issues of jurisdiction as well as convenience, there has been some tendency to limit its application to cases in which the state and federal claims are, as in *Hurn*, 'little more than the equivalent of different epithets to characterize the same group of circumstances.' 289 U.S., at 246, 53 S.Ct. 586."

The Court continues:

"This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *;' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim [made in the complaint] permits the conclusion that the entire action before the court comprises but one constitutional 'case.' "

In the case at bar, the alleged infringement of foreign patents does not involve state law, but the same reasoning as in *Gibbs* would seem to apply in determining the existence of federal court jurisdiction. All of the actions of defendant of which complaint is made are the result of defendant doing similar acts both in and out of the United States.

The parties to this suit are not in agreement as to the proper interpretation of the contract which they entered. The interpretation which is made of that contract will be important in deciding whether the infringement of foreign patents can be considered in this suit.

■ All that we can decide at this time is that the District Court was correct in denying the motion for a dismissal of the suit because of lack of jurisdiction. Whether the doctrine of ancillary jurisdiction should be applied should be determined by the District Court after it has interpreted the various rights of the parties under the contract.

The order of the District Court denying the motions for summary judgment and for dismissal of the complaint is

Affirmed.

FAIRCHILD, Circuit Judge (concurring).

The purpose of this concurring opinion is to suggest, at least, that the district court had jurisdiction, founded on diversity, to adjudicate the claims for infringement of foreign patents. In all other respects I join in the opinion of which Senior Circuit Judge Duffy is the author.

Is a cause of action for infringement of a patent a so-called transitory cause of action which may be adjudicated by the courts of a sovereign other than the one which granted the patent? If so, does it not follow that where such cause of action arose in a nation other than the United States, it is cognizable in the courts of states of the United States, or in United States courts where diversity exists?

An action for infringement of a patent is classified by American courts as a tort.[1] Generally, "a personal action may be brought in any place where the requisite service upon the defendant may be had."[2] Theoretically, it is possible for a state to regard almost any sort of extrastate cause of action as local, but the current trend is toward readier enforcement of claims arising under foreign laws.[3]

Even when an extrastate tort is transitory, there are several possible reasons why a court cannot, or, in its discretion, will not, assume jurisdiction. First, the court may feel that the claim is based on penal or revenue laws, or that it involves some other form of foreign governmental interest.[4] Secondly, the local judicial machinery may not be suitable to enforcement of the foreign based claim.[5] Thirdly, the action may be contrary to the public policy of the forum.[6] Fourthly, the forum state may be precluded from passing on an "act of state."[7] And lastly, the court may decline to exercise jurisdiction on the basis of *forum non conveniens*.[8]

One author has considered the question and concluded that, "If, however, such a [patent] right is tortiously invaded in the territory where it is protected, a claim for damages on this ground may well be brought in a foreign court having jurisdiction over the defendant."[9] A

1. Heath v. A. B. Dick Co. (7th Cir. 1958), 253 F.2d 30, 34.

2. Goodrich, Handbook of the Conflict of Laws 177 (4th ed. Scoles 1964).

3. Leflar, The Law of the Conflict of Laws 80 (1959). See also, Curry, The Constitution and the "Transitory" Cause of Action (1959), 73 Harv.L.Rev. 36, 66–9, 73 Harv.L.Rev. 268, 272–303; Looper, Jurisdiction over Immovables, 40 Minn. L.Rev. 191 (1956); Kuhn, Local and Transitory Actions in Private International Law, 66 U.Pa.L.Rev. 301 (1918); Goodrich, supra note 2, at 177–8. Compare, Ehrenzweig, A Treatise on the Conflict of Laws 103 (1962 ed.).

4. Leflar, supra note 3, at 83; Leflar, Extrastate Enforcement of Penal and Governmental Claims, 46 Harv.L.Rev. 193 (1932); Goodrich, supra note 2, at 18, 178.

5. Goodrich, supra note 2, at 20–1; Leflar, supra note 3, at 85–6.

6. Goodrich, supra note 2, at 14–17; Leflar, supra note 3, at 80; Paulsen and Sovern, "Public Policy" in the Conflict of Laws, 56 Colum.L.Rev. 959 (1956); Katzenbach, Conflicts on an Unruly Horse: Reciprocal Claims and Tolerances, 65 Yale L.J. 1087 (1956).

7. The "act of state" doctrine prevents the courts of one country from sitting in judgment on the act of another government done within its own territory. Banco Nacional De Cuba v. Sabbatino (1964), 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804. The doctrine does not apply to acts predominantly private in nature, but to acts where the state itself, as a state, has an interest, e. g., expropriation. See Zander, The Act of State Doctrine, 53 Am.J.Int.L. 826 (1959); Comment, The Act of State Doctrine— Its Relation to Private and International Law, 62 Colum.L.Rev. 1278 (1962).

8. Gulf Oil Corp. v. Gilbert (1947), 330 U. S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1 (1929); Goodrich, supra note 2, at 15–17, 140–1; Leflar, supra note 3, 87–90 (1959); Ehrenzweig, supra note 3, at 120–137.

9. 2 Rabel, The Conflict of Laws: A Comparative Study 295 (1947).

well-known English author states that, "If X does in France an act by which he infringes A's French patent  *  *  *" it is an "open question" whether A can successfully sue X in England.[10]

If the question just put were answered in the affirmative, the same reasoning which permitted A to sue in England would permit him to do so in the courts of a state of the United States, or in a district court of the United States if the conditions for diversity jurisdiction were fulfilled.

10.  Dicey, Conflict of Laws 951 (7th ed. Morris 1958).