**PACKARD INSTRUMENT COMPANY, INC., a Delaware corporation, Plaintiff,**

v.

**BECKMAN INSTRUMENTS, INC., a California corporation, Defendant.**

**Civ. A. No. 70 C 3150.**

United States District Court, N. D. Illinois, E. D.

July 21, 1972.

J. Robert Cassidy, Wolfe, Hubbard, Leydig, Voit & Osann, Raymond I. Suekoff, Chicago, for plaintiff.

Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, for defendant.

## MEMORANDUM OF DECISION

TONE, District Judge.

Defendant has moved to dismiss the counts of the complaint based on foreign patents. For purposes of this opinion, it is assumed that subject matter jurisdiction over the foreign patent claims exists on the basis of pendent jurisdiction and, alternatively, diversity. Ortman v. Stanray Corp., 163 U.S.P.Q. 331, 333 (N.D. Ill.1969); see also Judge

Fairchild's concurring opinion in Ortman v. Stanray Corp., 371 F.2d 154, 159 (7th Cir.1967).

In the first count of the complaint, plaintiff alleges infringement of a United States patent, and in succeeding counts infringement of corresponding patents in nine foreign countries, Canada, Sweden, France, Switzerland, Italy, Japan, West Germany, the United Kingdom, and Israel. Defendant has pleaded to the first count, asserting invalidity as an affirmative defense and counterclaiming for a declaratory judgment of invalidity. In its motion to dismiss the remaining counts defendant states that if it is required to plead it will assert the defense of invalidity to each of the foreign patents and asks the court to decline jurisdiction over the foreign patent claims. The motion to dismiss raises the issue of whether a district court of the United States may abstain from exercising jurisdiction over claims for infringement of foreign patents when the validity of those patents will be put at issue.

■ It is well established that abstention, in appropriate circumstances, is within the sound discretion of the district court. The abstention doctrine has arisen out of equitable principles. As Chief Justice Stone stated in Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943):

> "The exceptions [to the duty of federal courts to exercise their jurisdiction] relate to the discretionary powers of courts of equity. An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity

> . . . . Exercise of that discretion by those, as well as by other courts having equity powers, may require them to withhold their relief in furtherance of a recognized, defined public policy."

And in Burford v. Sun Oil Co., 319 U.S. 315, 317–318, 63 S.Ct. 1098, 1099, 87 L. Ed. 1424 (1943), Mr. Justice Black stated:

> "Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest' . . . ."

■ Whether abstention is appropriate in the circumstances presented in the case at bar seems never to have been decided. Judge Fairchild has observed, in discussing jurisdiction over foreign patent claims in his concurring opinion in Ortman v. Stanray Corp., *supra,* 371 F.2d at 159, that "the current trend is toward readier enforcement of claims arising under foreign laws." He points out, however, that there are several reasons that might justify a district court in refusing to exercise its jurisdiction of a claim based on a foreign patent. At least two of these reasons are pertinent here: a determination of the issue of validity of a foreign patent would involve a "form of foreign governmental interest," and, under the circumstances present here, a court of the United States would "not be suitable to enforcement of the foreign based claim." [1]

In applying the abstention doctrine in domestic contexts the interest in pre-

1. It has been argued with some force that a foreign patent claim should be treated as a local rather than a transitory action, because the validity of a patent, like the title to land, is governed by distinctively local law and depends upon local procedures and records, all of which are best understood by local tribunals. See *Note,* Jurisdiction Over Foreign Patent Claims, 66 Mich.L.Rev. 358 (1967). However inappropriate it may be to categorize all foreign patent claims as local and thereby raise an inflexible jurisdictional barrier, it would be equally doctrinaire to refuse to give weight to the considerations underlying the local-transitory dichotomy in a case in which they are pertinent. These considerations, in fact, are similar to the two reasons stated by Judge Fairchild which are referred to above. 371 F.2d at 159.

venting federal-state friction has been a principal consideration. *See, e. g.,* Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500–501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Similarly, the determination by this court that a foreign patent is invalid, *i. e.,* that the act of an agency of a foreign government is invalid, would raise serious questions of comity. Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 646–647 (2d Cir. 1956); Canadian Filters (Harwich) Ltd. v. Lear-Siegler, Inc., 412 F.2d 577, 578–579 (1st Cir.1969). The Court of Appeals for the Second Circuit said, in holding that the district court did not abuse its discretion in refusing to entertain a Canadian trademark claim in the *Vanity Fair* case (supra, 234 F.2d at 647):

> "Were this merely a transitory tort action in which disputed facts could be litigated as conveniently here as in Canada, we would think the jurisdiction of the district court should be exercised. But we do not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant. To do so would be to welcome conflicts with the administrative and judicial officers of the Dominion of Canada. We realize that a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere. But this power should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country."

These considerations, while they are stated in the *Vanity Fair* opinion under the heading "Forum Non Conveniens," are by their very nature applicable regardless of whether all the require-

ments[2] for dismissal on the ground of forum non conveniens are present.

It is also pertinent, as pointed out by the court in the *Vanity Fair* case (234 F.2d at 647, n. 20), that the foreign court would not necessarily respect a judgment entered by the United States court, especially when, as in the case at bar, one or both of the parties in the foreign court would not be the same as the parties in the United States court. This problem can be illustrated by comparing United States v. Imperial Chemical Industries, 105 F.Supp. 215, 229–231 (S.D.N.Y.1952) with British Nylon Spinners v. Imperial Chemical Industries, 1 Ch. 19 (1953).

It is not unlikely that courts in the foreign countries whose patents are involved here would disagree with this court's determinations on the validity of the patents. Those courts would at any rate be faced with the hard choice of accepting the inexpert determination of a foreign court or creating an unseemly conflict with the judgment of the court of another country.

In the federal-state context the mere difficulty of determining issues of state law, without more, is not a basis for abstention. Meredith v. Winter Haven, 320 U.S. 228, 234–235, 64 S.Ct. 7, 88 L.Ed. 9 (1943). In the present international context, however, this difficulty is compounded by the fact that a foreign country's patent law will be based upon that country's economic and social policies, which may be very different from those of the United States. This situation is analogous to that presented in the cases which have approved abstention in the federal-state context when the federal courts were asked to resolve problems the solution of which depended upon applying state policy based on considerations of a predominantly local nature. *See* Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Alabama Public Service Commission v. Southern Railway Co., 341 U.

2. One of which may be missing here because the defendant may not be amenable to process in the foreign countries whose patents are involved.

S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). It is evident that this court is not as well qualified to understand and apply the economic and social policies on which the issues of foreign patent law raised by a defense of invalidity may turn as are the courts of the various countries in which the patents were issued.

Also bearing on the suitability of a court of the United States for the enforcement of the foreign patent claims asserted here is the fact that it would be necessary to deal with seven foreign languages in order to decide eight of the ten foreign patent claims. Not only would this court be dependent upon legal opinions, undoubtedly conflicting, of experts in the laws of the foreign countries involved; the court would also be required to rely upon translations of those opinions and of the patents, statutes, regulations and court and administrative decisions on which the expert opinions are based. The risks of distortion of meaning in translation are apparent.

Finally, there may be no need for this court to determine the issues of validity and infringement of the foreign patents in order to give plaintiff the relief to which it is entitled. Defendant manufactures the accused devices only in its plant in the United States, and that plant is the sole source of all the accused devices sold in the nine foreign countries. If plaintiff's United States patent is valid and covers the accused devices, it is infringed whenever defendant makes a device and ships it to a foreign country for sale and use there.[3] Therefore, on the state of facts that presently exists, plaintiff can recover damages for each infringing device made and sold and obtain effective injunctive relief by enforcement of its United States patent.

For the foregoing reasons, the court will abstain from the exercise of jurisdiction over the claims asserted in Counts 2 through 11 of the complaint, as amended and supplemented, and those counts are dismissed.

---

3. From the defendant's answers to plaintiff's interrogatories, it would appear that the alleged infringing device is manufactured in its entirety in the United States and would therefore not fall within the exception to the reach of the United States patent laws which exists when merely components of a patented device are manufactured in this country and are subsequently transported to a foreign country for final assembly. *See* Deepsouth Packing Co., Inc., v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (May 30, 1972).