**LONDON FILM PRODUCTIONS LIMITED, Plaintiff,**

v.

**INTERCONTINENTAL COMMUNICATIONS, INC., Defendant.**

No. 83 Civ. 1668(RLC).

United States District Court, S.D. New York.

Feb. 17, 1984.

Burns, Summit, Rovins & Feldesman, New York City, for plaintiff; Herbert P. Jacoby, New York City, of counsel.

Curtis, Morris & Safford, P.C., New York City, for defendant; Stuart A. White, New York City, of counsel.

ROBERT L. CARTER, District Judge.

This case presents a novel question of law. Plaintiff, London Film Productions, Ltd. ("London"), a British corporation, has sued Intercontinental Communications, Inc. ("ICI"), a New York corporation based in New York City, for infringements of plaintiff's British copyright. The alleged infringements occurred in Chile and other South American countries. In bringing the case before this Court, plaintiff has invoked the Court's diversity jurisdiction. 28 U.S.C. § 1332(a)(2). Defendant has moved to dismiss plaintiff's complaint, arguing that the Court should abstain from exercising jurisdiction over this action.

*Background*

London produces feature motion pictures in Great Britain, which it then distributes throughout the world.[1] ICI specializes in the licensing of motion pictures, produced by others, that it believes are in the public domain. London's copyright infringement claim is based mainly on license agreements between ICI and Dilatsa S.A., a buying agent for Chilean television stations. The agreements apparently granted the latter the right to distribute and exhibit certain of plaintiff's motion pictures on television in Chile. London also alleges that ICI has marketed several of its motion pictures

in Venezuela, Peru, Equador, Costa Rica and Panama, as well as in Chile.

Plaintiff alleges that the films that are the subjects of the arrangements between Dilatsa S.A. and defendant are protected by copyright in Great Britain as well as in Chile and most other countries (but not in the United States) by virtue of the terms and provisions of the Berne Convention.[2] The license agreements, it maintains, have unjustly enriched defendants and deprived plaintiff of the opportunity to market its motion pictures for television use.

Defendant questions this Court's jurisdiction because plaintiff has not alleged any acts of wrongdoing on defendant's part that constitute violations of United States law,[3] and, therefore, defendant claims that this Court lacks a vital interest in the suit. In addition, assuming jurisdiction, defendant argues that because the Court would have to construe "alien treaty rights," with which it has no familiarity, the suit would violate, in principle, the doctrine of *forum non conveniens.* In further support of this contention, defendant maintains that the law would not only be foreign, but complex, since plaintiff's claims would have to be determined with reference to each of the South American states in which the alleged copyright infringements occurred.

*Determination*

■ There seems to be no dispute that plaintiff has stated a valid cause of action under the copyright laws of a foreign country. Also clear is the fact that this Court has personal jurisdiction over defendant; in fact, there is no showing that defendant may be subject to personal jurisdiction in another forum. Under these circumstances, one authority on copyright law has presented an argument pursuant to which this Court has jurisdiction to hear the mat-

---

1. These include: "The Private Life of Henry VIII", "Things To Come", and "Jungle Book", all of which are subjects of this suit.

2. The Berne Convention is a shorthand designation for the "International Union for the Protection of Literary and Artistic Works", signed in Berne, Switzerland on September 9, 1886, as amended. The text of the Convention as most recently revised in Paris in 1971, is reproduced

in 4 *Nimmer on Copyright,* Appendix 27 (1983). Chile adhered to the Convention on June 5, 1970, but the United States has never become a party thereto. *Id.* at Appendix 22.

3. The films named, although formerly subject to United States copyrights, are no longer so subject.

ter before it. M. Nimmer, 3 *Nimmer on Copyright,* (1982). It is based on the theory that copyright infringement constitutes a transitory cause of action,[4] and hence may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose. *Id.* at § 1703. That theory appears sound in the absence of convincing objections by defendant to the contrary.

Although plaintiff has not alleged the violation of any laws of this country by defendant, this Court is not bereft of interest in this case. The Court has an obvious interest in securing compliance with this nation's laws by citizens of foreign nations who have dealings within this jurisdiction. A concern with the conduct of American citizens in foreign countries is merely the reciprocal of that interest. An unwillingness by this Court to hear a complaint against its own citizens with regard to a violation of foreign law will engender, it would seem, a similar unwillingness on the part of a foreign jurisdiction when the question arises concerning a violation of our laws by one of its citizens who has since left our jurisdiction. This Court's interest in adjudicating the controversy in this case may be indirect, but its importance is not thereby diminished.

Of course, not every violation of foreign law by a citizen of this country must be afforded a local tribunal, and defendants cite several cases in which, basically under general principles of comity, it would be inappropriate for this Court to exercise its jurisdiction. *Cf. Kalmich v. Bruno,* 404 F.Supp. 57, 61 (N.D.Ill.1975), *rev'd on other grounds,* 553 F.2d 549 (7th Cir.1977), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). This is not one of those. The line of cases on which defendants rely can be distinguished on significant points. The Court in *Vanity Fair Mills, Inc. v. T. Eaton, Ltd.,* 234 F.2d 633 (2d Cir.) *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), the principal case

of those cited, found that the district court had not abused its discretion in declining to assume jurisdiction over a claim for acts of alleged trademark infringement and unfair competition arising in Canada under Canadian law. As defendant here has acknowledged, the complaint raised a "crucial issue" as to the validity of Canadian trademark law. This factor weighed heavily in the Court's decision.

> We do not think it the province of United States district courts to determine the validity of trademarks which officials of foreign countries have seen fit to grant. To do so would be to welcome conflicts with the administrative and judicial officers of the Dominion Canada.

*Id.* at 647. But as Nimmer has noted, "[i]n adjudicating an infringement action under a foreign copyright law there is … no need to pass upon the validity of acts of foreign government officials," 3 Nimmer, *supra,* at § 1703, since foreign copyright laws, by and large, do not incorporate administrative formalities which must be satisfied to create or perfect a copyright. *Id.*

The facts in this case confirm the logic of Nimmer's observation. The British films at issue here received copyright protection in Great Britain simply by virtue of publication there. Copinger, *Law of Copyright,* (9th ed. 1958), 21 *et seq.* Chile's adherence to the Berne Convention in 1970 automatically conferred copyright protection on these films in Chile. Therefore, no "act of state" is called into question here. Moreover, there is no danger that foreign courts will be forced to accept the inexpert determination of this Court, nor that this Court will create "an unseemly conflict with the judgment of another country." *See Packard Instrument Co. v. Beckman Instruments, Inc.,* 346 F.Supp. 408, 410 (N.D.Ill. 1972). The litigation will determine only whether an American corporation has acted in violation of a foreign copyright, not

---

**4.** *See* 3 Nimmer, *supra* at § 12.01[C] (copyright is intangible incorporeal right; it has no situs

apart from domicile of proprieter).

whether such copyright exists, nor whether such copyright is valid.[5]

■ With respect to defendant's *forum non conveniens* argument, it is true that this case will likely involve the construction of at least one, if not several foreign laws.[6] However, the need to apply foreign law is not in itself reason to dismiss or transfer the case. *Manu Int'l S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67–68 (2d Cir.1981). Moreover, there is no foreign forum in which defendant is the subject of personal jurisdiction, and an available forum is necessary to validate dismissal of an action on the ground of *forum non conveniens*, for if there is no alternative forum "the plaintiff might find himself with a valid claim but nowhere to assert it." *Farmanfarmaian v. Gulf Oil Corp.*, 437 F.Supp. 910, 915 (S.D.N.Y.1977) (Carter, J.), *aff'd*, 588 F.2d 880 (2d Cir.1978).

■ While this Court might dismiss this action subject to conditions that would assure the plaintiff of a fair hearing, *Mizokami Bros. of Ariz v. Mobay Chemical Corp.*, 660 F.2d 712, 719 (8th Cir.1981), neither plaintiff nor defendant has demonstrated the relative advantage in convenience that another forum, compared to this one, would provide. *Overseas Programming Companies v. Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir.1982). The selection of a South American country as an alternative forum, although it would afford greater expertise in applying relevant legal principles, would seem to involve considerable hardship and inconvenience for both parties. A British forum might similarly provide some advantages in the construction of relevant law, however, it would impose additional hard-

ships upon defendant, and would raise questions, as would the South American forum, regarding enforceability of a resulting judgment. *See American Rice, Inc. v. Arkansas Rice Growers Co-op. Ass'n.*, 701 F.2d 408, 417 (5th Cir.1983). Where the balance does not tip strongly in favor of an alternative forum it is well-established that the plaintiff's choice of forum should not be disturbed.

For all of the above reasons, the Court finds it has jurisdiction over the instant case and defendant's motion to dismiss is denied, as is its motion to have the Court abstain from exercising its jurisdiction here. The parties are to complete discovery 90 days from the date of this opinion. Their pretrial order is to be submitted to the Court two weeks thereafter.

IT IS SO ORDERED.

---

**5.** It should also be noted that application of foreign law in this jurisdiction creates no conflicts in public policy with our own laws. *Cf. Kalmich v. Bruno, supra.* Although the United States is not a party to the multilateral copyright treaty known as the Berne Convention, American nationals obtain copyright protection under foreign laws by virtue of the Universal Copyright Convention. The principal of the U.C.C. is the same as that of the Berne Convention. Under both treaties "an author who is a national of one of the member states ... or one who publishes his work in any such member state, is entitled to the same copyright protec-

tion in each other member state as such other state accords its own nationals." 3 Nimmer, *supra* at § 12.05.

**6.** Plaintiff has alleged infringements in Chile, Venezuela, Peru, Equador, Costa Rica and Panama. Since, under the Berne Convention, the applicable law is the copyright law of the state in which the infringement occurred, defendant seems correct in its assumption that the laws of several countries will be involved in the case. 3 Nimmer, *supra* at § 17.05.