TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Incorporated, Plaintiffs-Appellants,

v.

METHODE ELECTRONICS, INC., Defendant-Appellee.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Incorporated, Plaintiffs-Appellants,

v.

GENERAL TELEPHONE & ELECTRONICS CORPORATION and Automatic Electric Company, Defendants-Appellees.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Incorporated, Plaintiffs-Appellants,

v.

WEBCOR, INCORPORATED, Defendant-Appellee.

TECHNOGRAPH PRINTED CIRCUITS, LTD., and Technograph Printed Electronics, Incorporated, Plaintiffs-Appellants,

v.

CRONAME, INCORPORATED, Defendant-Appellee.

Nos. 15020, 15021, 15023, 15024.

United States Court of Appeals Seventh Circuit.

Jan. 7, 1966.

Rehearing Denied in Nos. 15021, 15023 March 22, 1966.

Walter J. Blenko, Pittsburgh, Pa., Jerome F. Fallon, Chicago, Ill., Walter J. Blenko, Jr., Paul A. Beck, Pittsburgh, Pa., for plaintiffs-appellants, M. Victor Leventritt, New York City, of counsel.

Theodore W. Anderson, Arthur A. Olson, Victor Myer, Charles M. Carter, Chicago, Ill., for Automatic Electric Co., defendant-appellee.

Lawrence W. Brugman, Warren C. Horton, Chicago, Ill., for Croname, Inc., defendant-appellee.

Watson D. Harbaugh, Evanston, Ill., for Webcor, Inc., defendant-appellee, Harbaugh, Rummler & Snow, Evanston, Ill., of counsel.

Ralph B. Stewart, Washington, D. C., William D. McFarland, Chicago, Ill., Kemon, Palmer, Stewart & Estabrook, Washington, D. C., for Methode Electronics, Inc., defendant-appellee, Spray, Price, Hough & Cushman, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

These are parallel cases filed in the United States District Court for the Northern District of Illinois by plaintiffs charging infringement of Eisler patents No. 2,441,960 (No. 960), Reissue No. 24,-165 (No. 165) and No. 2,706,697 (No. 697).

The Eisler patents in suit are generally concerned with methods of producing so-called "printed circuits" for use in the manufacture of electronic equipment. For a more detailed description of patent claims, reference is made to the opinion in Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., D.C., D.Md., 218 F.Supp. 1 (1963).

Plaintiff Technograph Printed Circuits, Ltd., is an English company which holds legal title to the patents in suit by assignments from the inventor, Paul Eisler.

Plaintiff Technograph Printed Electronics, Incorporated, a North Carolina corporation, is the exclusive licensee under said patents with right to license others.

Plaintiff filed six infringement actions in the district court, as follows:

(1) An action against Methode Electronics, Inc., charging infringement of Nos. 960, 165 and 697. (Appeal No. 15020).

(2) An action against Admiral Corporation for infringement of No. 165. This action was settled during proceedings in the district court and is not before us on appeal.

(3) An action against General Telephone & Electronics Corporation and its subsidiary Automatic Electric Company for infringement of Nos. 165 and 697. The action was dismissed as to General Telephone for lack of personal jurisdiction and improper venue. It has continued against Automatic Electric (Appeal No. 15021).

(4) An action against Trav-Ler Industries, Inc., for infringement of No. 165. This action became Appeal No. 15022, but has since been settled and dismissed by stipulation and is no longer before us on appeal.

(5) An action against Webcor, Incorporated for infringement of No. 165. (Appeal No. 15023).

(6) An action against Croname, Incorporated for infringement of Nos. 960, 165 and 697. (Appeal No. 15024).

Each of the remaining above named four defendants filed a motion for summary judgment, which motions were granted by the district court by a minute order, entering judgments in favor of defendants, dismissing plaintiffs' respective complaints at plaintiffs' costs.

Plaintiffs have appealed from the several judgments in Nos. 15020, 15021, 15023 and 15024, respectively.

PLAINTIFFS' OTHER LITIGATION

It appears that prior to the filing of the instant complaints in the district court, plaintiffs had filed about ten other actions charging infringement of the Eisler patents against other than the present defendants in various other jurisdictions of the United States. It also appears that at the time of the consideration of case by the district court plaintiffs had filed numerous additional similar actions against other defendants in other districts.

On May 25, 1959, plaintiffs filed an action against Bendix Aviation Corporation in the United States District Court for the District of Maryland. It charged Bendix with infringement of Nos. 960, 165 and 697.

Bendix answered, denying infringement and alleging invalidity of all three patents (and all their claims) on the grounds, *inter alia,* of anticipation, obviousness in light of the prior art; and other specific defenses as to certain of the three patents.

Following a prolonged trial, the district court, Honorable R. Dorsey Watkins, presiding, found that certain claims of the Eisler patents were invalid for a number of reasons, including invalidity in view of the prior art, and were not infringed. Judge Watkins published an extended memorandum opinion in support of his decision. Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., 218 F.Supp. 1–67 (1963).[1]

On appeal, the Fourth Circuit affirmed per curiam, 327 F.2d 497 (1964), cert. denied, 379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36 (1964), stating: "After careful consideration of the record, the arguments and the briefs of counsel, we are persuaded that the patent claims are invalid for obviousness in the light of the prior art for the reasons fully discussed in the opinion of the District Court."

## PROCEEDINGS LEADING TO SUMMARY JUDGMENT

After the affirmance of the Bendix case by the Fourth Circuit, plaintiffs moved to consolidate the six cases then pending here in the district court. At the hearing on this motion, the district court, having been previously advised of the decision in the Maryland case, raised the question of the extent to which that decision would be controlling in the pending cases. The trial court was of the fixed opinion that counsel should find some way to test out the question. Counsel for Admiral suggested a motion for summary judgment based on the evidence in the Maryland case. Counsel for Webcor, after consulting with other lawyers present, did not "think a summary judgment at the present time is exactly the four-square way of hitting this thing." He suggested a motion for plaintiffs to show cause why judgment should not be entered against them on invalidity. Plaintiffs objected to summary judgment stating, *inter alia,* they proposed to put in additional evidence on the question of validity. The trial court put the matter over for two weeks for counsel to act "because I think this produces a ridiculous situation."

Thereafter, at a hearing set for all pending motions, the district court stated: "Well, we are not going to spend much time on this. Somebody has had a full and complete trial in another court, and I don't know why we have to go over the whole matter again. This matter will be continued until some time in September or October, and at that time I think somebody ought to show cause why a motion should not be made here which would dispose of this matter without the necessity of a trial."[2]

Upon being advised that all defendants either had filed or were ready to file motions for summary judgment, the trial court set a hearing on such motions for a subsequent date. At the subsequent hearing, the case was taken on the papers

1. The nature and extent of the hearings before Judge Watkins are set out at 218 F.Supp. 8, n. 21.

2. In these proceedings, plaintiffs cited Judge Lindley's opinion in Aghnides v. Holden, 7 Cir., 226 F.2d 949, 951 (1955), holding that though a patent had been adjudged invalid in another patent infringement action against other defendants, plaintiffs cannot be deprived "of the right to show, if they can, that, as against defendants who have not previously been in court, the patent is valid and infringed." To this citation the trial court responded, "We will try to see if there isn't some way of getting around that decision by Judge Lindley. You have had your day in Court and you have been all through the courts down in Baltimore concerning this matter, and I think one bite of the cherry ought to be enough, because it is not a very big cherry."

filed by the respective parties, without oral argument. Twelve days later, summary judgment was granted.

We have set out some of the observations made by the learned trial judge, not by way of criticism, but to show his genuine concern with the state of the record as he found it and what he thought should be done about it. There is little doubt in our minds that he did "think one bite of the cherry ought to be enough" and that the Maryland decision in Bendix settled the matter.

We have carefully examined the four separate motions for summary judgment filed by defendants below, together with the supporting material in each case.

Methode (Appeal No. 15020) asserts (1) the claims of the three patents in suit are invalid for obviousness in light of the prior art for the reasons set out by the Maryland court in Bendix; (2) the claims of No. 165 are invalid for the reason that they are ambiguous, vague and indefinite; (3) the claims of No. 165 are void for double patenting over No. 960; (4) the claims of Nos. 165 and 960 are invalid as covering inoperative procedures; and (5) claim 5 in No. 697 is invalid for the omission of an indispensable step in the claimed process. The grounds are substantially a repetition of the holdings of the district court in Bendix. In addition, Methode filed an index of documentary exhibits on the motion for summary judgment consisting of the disclaimers in Eisler's British patents; no corresponding disclaimers in United States patents; reproduction of prior art patents and publications reflecting 16 United States patents, 6 British patents and one patent each from France, Germany and Russia. Methode also submitted to the trial court a brief containing counsel's summary of the teachings and meaning of the supporting material, including a number of references to the district court's opinion in Bendix.

The other defendants, Croname, Webcor and Automatic Electric generally limited their grounds for summary judgment to claims of invalidity on anticipation and obviousness in light of the prior art for the reasons expressed by the district court in Bendix. Each filed a supporting brief by counsel on the teachings of the prior art, as did Methode.

In answer and opposition to defendants' several motions for summary judgment, plaintiffs filed six affidavits all based on personal knowledge, which may be summarized as follows:

(1) Professor Everard M. Williams, head of the Department of Electrical Engineering at the Carnegie Institute of Technology, Pittsburgh, Pennsylvania. After stating his experience and professional attainments, affiant discussed the technical aspects of some of the problems involved in the methods of manufacturing electronic gear. He discussed the specifications and claims of each of the three Eisler patents and stated his findings favorable to plaintiffs' contentions. He had read the district court opinion in Bendix and examined the patents and publications and references referred to in that opinion (listing them) and failed to find in them a disclosure of the subject matter set forth in any claim of the Eisler patents. He found no disclosures in the cited prior art which would make the subject matter as a whole set forth in any claim of the Eisler patents obvious to a person having ordinary skill in the electrical and electronics art. He did not believe the subject matter of the patents would have been obvious to a person having ordinary skill in the electrical and electronics art. He found the differences between the processes set forth in the claims of each of the Eisler patents to be significant and important in the manufacture of electronic gear and that such differences represented the difference between success and failure in commercial manufacturing.

(2) Thomas D. Jolly, a retired vice-president of the Aluminum Company of America and an engineer. Affiant stated his experience in the manufacture of aluminum foil and its use. He stated that the section of the district court opinion in Bendix, reported at 218 F.Supp. at pages 38–40, entitled "Foil", containing

statements that the difference between foil and metal deposited *in situ* is "semantics", and that either metallized paper and metal coatings are foil or are the equivalent of foil, "do not comport with the recognized and established meaning of the word 'foil' and are incorrect in fact."

(3) Hubert L. Shortt, president of plaintiff Technograph Printed Electronics, Inc. Affiant stated his business and manufacturing experience and the commercial success of plaintiff in licensing the use of the Eisler patents. Accumulated royalties collected to date by plaintiff were in excess of $1,500,000. He listed licensees of the Eisler patents (16 in number), including major national companies in the electronics business.

(4) George R. Town, Dean of Engineering and Director of the Engineering Experiment Station at Iowa State University, Ames, Iowa. Affiant stated in substance the same matter set out in the affidavit of Dean Williams, supra, except in a more detailed manner and specifically discussed the shortcomings of 11 patents in the cited prior art. He also disputed the factual correctness of a number of statements in the district court opinion in Bendix, with specific references thereto.

(5) William L. Everitt, Dean of the College of Engineering, University of Illinois, Urbana, Illinois. His affidavit followed the same general pattern of those of Professor Williams and Dean Town.

(6) John C. Pitzer, retired Manager of Application Development for Industrial Products of Formica Corporation, Cincinnati, Ohio, a chemical engineer. His affidavit dealt with the use of satisfactorily bonded metal-clad laminate and is not directly relevant to the issues before us on appeal.

In reply to plaintiffs' affidavits in opposition to summary judgment, defendants filed briefs generally taking the position that plaintiffs' affidavits were conclusory in nature and did not point to new evidence; that the question of obviousness in view of the prior art was a question of law and not of fact; and that the question of invention could be decided on the basis of the documentary evidence before the court and without expert help in reading the patents.

The district court filed no supporting memorandum opinion stating its reasons for finding and holding the patents in suit to be invalid, nor did the district court make findings of fact or state conclusions of law in support of its judgment. As a consequence, we are left in the dark concerning the district court's reasons for granting summary judgment.

Under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., the trial court was not required to do so. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 * * *." Rule 52 (a), supra. Whether good practice in a given case should dictate the contrary is a matter of policy to which we shall subsequently allude.

Defendants' several motions for summary judgment are authorized under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. Under Rule 56(b), defendants elected not to file supporting affidavits with their motions. They contend there was only a question of law presented by such motions.

The parties now are in general agreement that the judgment in the Maryland court in the Bendix case is not *res judicata* in the instant case. This was made clear in Aghnides v. Holden, 7 Cir., 226 F.2d 949 (1955) and the authorities cited therein.

Further, it is well settled that, in a proper case, the validity of a patent may be determined by use of summary judgment. A R Inc. v. Electro-Voice, Incorporated, 7 Cir., 311 F.2d 508, 511 (1962); Magee v. Coca-Cola Company, 7 Cir., 232 F.2d 596, 599 (1956); Davison Chemical Corp. v. Joliet Chemicals, 7 Cir., 179 F.2d 793, 795 (1950).

"On summary judgment the inferences to be drawn from the underlying facts contained in such materials [affidavits, exhibits and depositions] must be

viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Stated conversely, it was the duty of the district court "to resolve all doubts as to the existence of a genuine issue as to a material fact against the party moving for summary judgment." Chesapeake & O. Ry. Co. v. International Harvester Co., 7 Cir., 272 F.2d 139, 142 (1959).

■ We find the argument of defendants that no disputed factual question is material here and that the determination of obviousness is solely a question of law in the instant case not to be well founded. In Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 156–157 (1960), we held that the showing made by the prior art, the nature of the improvement the patentee has made over the prior art and the element of novelty were all factual questions. Those questions of fact having been determined, the final resolution of obviousness under Sec. 103 of the Patent Act then "requires the application of the correct legal criteria *to the factual determination made by the trial court.* This calls for the exercise of a legal judgment and as such is subject to review by an appellate tribunal as a question of law." Id. at 156. (Emphasis added.)

One needs but to read the lengthy opinion of the district court in Bendix, supra, on which defendants place so much reliance, to note the sharp and bitter dispute concerning the factual determinations underlying the application of the correct legal criteria required by Sec. 103. It is true that the district court here had the Bendix opinion to consider, but that is a far cry from having before it the record of the testimony in that case or finding that plaintiffs have no new or additional evidence.

■ We find from the record before us on this appeal that there is a genuine issue of material fact present here essential to the determination of the issues presented by defendants' motions for summary judgment. The district court erred in granting summary judgment below.

In A R Inc. v. Electro-Voice, Incorporated, supra, we observe from the record that the district court filed an extensive memorandum opinion reviewing the claims of the patent in suit in comparison to the prior state of the art.

In Davison Chemical Corp. v. Joliet Chemicals, supra, the district court had before it only the pleadings, the patent in suit and its file wrapper, one prior patent, the deposition of the patentee, and two affidavits as to the status of the prior art, none of which was disputed.

In Magee v. Coca-Cola Company, supra, our court noted that plaintiffs offered no controverting evidence, thus leaving that introduced by defendants undisputed. Further, in that case, we had before us the opinion of the district court, Honorable Walter J. La Buy, reported in 17 F.R.D. 10 (1955). This opinion discloses the issue raised by motion for summary judgment was patent invalidity because of prior public use or sale. There were depositions of six witnesses, brochures, alleged anticipating patent and the patent in suit. There was an oral argument on the motion, a demonstration of the alleged infringing device and a stipulation limiting certain proof. The district court fully stated its views on the issues presented for determination. It also made this statement:

"Rule 56 applies to patent cases and is used in those instances where the structure and mode of operation of the accused device may be readily comprehended by the court and compared with the invention described and claimed in the patent without need of technical explanation by expert witnesses. A summary judgment should not, however, be entered except where the defendant is entitled to judgment beyond all doubt, or where the evidence presented in support thereof would compel the direction of a verdict." Id. at 11.

We agree.

The language of Judge Lindley, speaking for our court in Aghnides v. Holden, 7 Cir., 226 F.2d 949 (1955), is relevant and should be noted.[3]

In Hazeltine Research v. General Electric Co., 7 Cir., 183 F.2d 3, 5–7 (1950), in reversing a summary judgment, the court took note of the technical nature of the fact question involved relative to the question of invalidity for want of invention. The court had grave doubts that there were no contested issues of material fact and resolved those doubts against the party moving for summary judgment.

Defendants here pay us a stale compliment in citing our statement in Armour & Co. v. Wilson & Co., 274 F.2d at 156, "The testimony relates to the use made of prior art, and the documentary and physical exhibits do not stand mute but speak for themselves." In the instant case, the patents in suit and the voluminous prior art are of such technical nature as to escape our understanding. They may "speak for themselves" but we feel the need of expert translation and interpretation, screened for us by appearance and demonstration before a trial court.

3. "This suit was pending at the time of our former decisions. It was against other alleged infringers who are not shown to be identified in any wise with the defendants in the former case, or in privity with them. It would seem axiomatic therefore, that the rules of res adjudicata do not apply and, indeed, defendants do not insist that they do. Nor can it be said that our decision in the former case is the law of this circuit to the extent that it is decisive in other cases for infringement against other defendants. Plaintiffs have a right, if they desire, to litigate as against other defendants and not until and unless it appears by the evidence submitted at the trial that it does not differ essentially from the evidence submitted in the former case, will the decision in the first case become the law of the present one. Thus, in Triplett v. Lowell, 297 U.S. 638, at pages 642–644, 56 S.Ct. 645, at page 647, 80 L.Ed. 949, the Supreme Court said: 'Neither reason nor authority supports the contention that an adjudication adverse to * * * the claims of a patent precludes another suit upon the same claims against a different defendant. While the earlier decision may by comity be given great weight in a later litigation and thus persuade the court to render a like decree, it is not res adjudicata and may not be pleaded as a defense. See Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 35, 50 S.Ct. 9, 74 L.Ed. 147. * * * neither the rules of the common law applicable to successive litigations concerning the same subject-matter, nor the disclaimer statute, precludes relitigation of the validity of a patent claim previously held invalid in a suit against a different defendant.' It continued, 297 U.S. at page 648, 56 S.Ct. at page 650:

'The fact that the suit was brought in the same circuit where the Court of Appeals had previously held some of the claims invalid is immaterial, for the court must decide whether the issues of law and fact in the two cases are the same, and if they are not it is not bound by the earlier decision.'

"A case similar to the one before us is Gold Seal Importers, Inc. v. Westerman-Rosenberg, Inc., 2 Cir., 133 F.2d 192. There, by amended answer, the defendant averred that the patent had been held invalid by the Court of Appeals in the case of Gold Seal Importers v. Morris White Fashions, 2 Cir., 124 F.2d 141, and moved for judgment on the pleadings. There, too, the district court granted the motion merely because the validity of the patent had been decided adversely to the plaintiff in the former case. The judgment was reversed. The court said, Gold Seal Importers, Inc. v. Westerman-Rosenberg, Inc., 2 Cir., 133 F.2d at pages 192–193: '* * * obviously that decision cannot be pleaded as res judicata in a suit against a different infringer not in privity with Morris White Fashions. Nor is it a precedent which the district court was bound to follow, unless the evidence pertinent to the issue of validity is the same in both cases. Smith v. Hall, 301 U.S. 216, 218, 57 S.Ct. 711, 81 L.Ed. 1049; Lektophone Corp. v. Miller Bros., D.C. Del., 37 F.2d 580, 581; Minerals Separation v. Butte & Superior Copper Co., D.C.Mont., 237 F. 401, 402.'

"Of course it is desirable that there should be an end to litigation. But this beneficent result cannot be attained at the expense of depriving plaintiffs of the right to show, if they can, that, as against defendants who have not previously been in court, the patent is valid and infringed." Id. 226 F.2d at 950–951.

From a practical standpoint, an affirmance of the summary judgments in this case would require, in essence, a consideration of the case *de novo* with an adequate treatment of the patents in suit and the prior art. This we are neither prepared nor qualified to do, given the present state of the record. Effective judicial administration dictates this should not be required of a court of appeals.

In this case, we are not attempting to decide issues of fact and express no opinion on the validity of the patents in suit. We make no judgment on the validity of the opinion and holdings in the Bendix case in the courts of the Fourth Circuit. The Bendix decision may by comity be given great weight by the district court after it hears testimony in a trial of the instant case on the merits. That consideration is committed to the discretion of the trial court.

Finally, defendants strongly suggest that plaintiffs are not acting in good faith in pursuing this litigation and in filing a multitude of similar actions against other defendants in other jurisdictions. In effect, they charge plaintiffs are guilty of litigious harassment in pursuit of further license agreements.

We have assumed plaintiffs here are acting in good faith. If, on a trial on the merits, this confidence should prove to be ill-founded, it lies within the power of the district court to impose the statutory sanction of awarding attorney fees. 35 U.S.C.A. § 285. We have as little enthusiasm for unwarranted litigation as we do for improper use of summary judgment procedures in patent actions.

It is apparent that plaintiffs' prayer asking us to hold the Eisler patents valid is misplaced and cannot be considered.

For the foregoing reasons, we hold that summary judgment was improperly granted in these cases before us on appeal. The judgments below are reversed and the causes are remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.