**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 8, AFL-CIO, Plaintiff-Appellee,**

v.

**J. L. CLARK COMPANY, Defendant-Appellant.**

**No. 71–1532.**

United States Court of Appeals, Seventh Circuit.

Argued May 10, 1972.

Decided Nov. 20, 1972.

Rehearing Denied Dec. 29, 1972.

Edward J. Fahy, Rockford, Ill., for defendant-appellant.

Sheldon M. Charone, Sherman Carmell, Stuart N. Litwin, and Stephen B. Horwitz, Chicago, Ill., for plaintiff-appellee.

Before KILEY and PELL, Circuit Judges, and GORDON, District Judge.[1]

KILEY, Circuit Judge.

This is an appeal by J. L. Clark Company (Company) from a summary judgment for International Association of Machinists and Aerospace Workers, District No. 8, AFL–CIO (Union) in the Union's suit under Section 301 of the Labor Management Relations Act, 29 U. S.C. § 185, to enforce an arbitration award. We reverse and remand.

The vital issue presented is whether an employee who abandoned a general strike against the Company and returned to work should be entitled to retain the position he now occupies despite the fact that his level of seniority is inferior to a worker who, having participated in the strike until a settlement was reached, now seeks reinstatement to the same position.

■■ The principles of law governing this question are well settled. Section 2(3) of the National Labor Relations Act (61 Stat. 137, 29 U.S.C. § 152(3)) provides that a striking employee remains an employee unless he has obtained regular and substantially equivalent employment. It is incumbent upon an employer at the conclusion of a strike to reinstate striking employees. Refusal to reinstate has the effect of discouraging employees in the exercise of their Section 7 right to organize and strike, 61 Stat. 140 and 151, 29 U.S.C.

§§ 157 and 163, and is therefore an unfair labor practice. N.L.R.B. v. Fleetwood Trailer Co., 389 U.S. 375, 378, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). However, where an employer can show that "legitimate and substantial business justification" exists which prevents reinstatement, he will be excused from the requirement. N.L.R.B. v. Great Dane Trailers, 388 U.S. 26, 34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). One business justification now recognized to be "legitimate and substantial" results when an employer hires "permanent replacements" to perform the work of striking employees. In this situation, the employer's interest in continuing his business during an economic strike, coupled with the necessity of offering the inducement of permanent employment to secure employees willing to violate a picket line, justifies the exception of the reinstatement requirement. See N.L.R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); N.L.R.B. v. Fleetwood Trailer Co., *supra*, 389 U.S. at 379, 88 S.Ct. 543; N.L.R.B. v. Plastilite Corp., 375 F.2d 343 (8th Cir. 1967); N.L.R.B. v. Colonial Manor Convalescent & Nursing Home, (7th Cir. decided August 3, 1972).

■ Simply stated, the question before us is whether the employee who abandoned the strike and returned to work resumed work as a "permanent replacement." If so, he is clearly entitled to retain his present position despite his inferior seniority level. To resolve this controversy, the trial court had before it the following facts: On January 20, 1970, having failed to reach agreement on a new collective bargaining agreement, the Union called a general strike against the Company. During the course of the ensuing five month strike, employee Hinsch abandoned the strike and returned to his position as a machinist in the Company's Tool Room Department. On April 7, 1970, employee Cinelli, a tool and die maker, engaged in

1. Honorable Myron L. Gordon is sitting by designation from the United States District Court for the Eastern District of Wisconsin.

several acts of picket line misconduct which resulted in his discharge by the Company.

Further: Agreement was reached on a new collective bargaining agreement in June, 1970, and the strike was settled. Under the settlement the Company agreed to submit the question of Cinelli's discharge to arbitration and to reinstate striking employees on a seniority basis. The arbitrator found that while Cinelli had in fact been guilty of misconduct, his long and distinguished service with the Company as employee and Union steward mitigated his behavior to the extent that discharge was too harsh a punishment for his misconduct. The effect of the award was to convert the discharge to a disciplinary suspension without pay which was to end no later than November 27, 1970. Cinelli's seniority rights were left unimpaired.

Immediately after the disciplinary suspension period had expired, Cinelli notified the Company that he intended to report for work. However, when he reported he was told by the plant manager that there was no position available for him.[2] The Union made inquiries concerning the basis for the Company's refusal to reinstate Cinelli and upon learning that Hinsch, whose seniority level was lower than Cinelli's, was employed, demanded that the Company replace Hinsch. The Company refused, taking the position that Cinelli's greater seniority did not entitle him to the position occupied by Hinsch since Hinsch was being treated as a "permanent replacement." Based upon the Company's refusal to reinstate Cinelli, the Union brought this Section 301 action to enforce the arbitrator's award.

Both parties moved for summary judgment and supported the motions with affidavits. The district court denied the Company's motion and granted

the Union's motion pursuant to a finding that Hinsch "is not a permanent replacement" and that his post-strike employment did not come within the "legitimate and substantial business justifications" exception to the rule in N. L. R. B. v. Fleetwood Trailer Co., *supra*.

 We find that the district court improperly granted the Union's motion for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered only where no genuine issue as to any material fact exists. Having reviewed all the information brought before the trial court in the various affidavits supporting the summary judgment motions, the opinion of the arbitrator and the pleadings, we believe the substantial factual question of whether Hinsch was a "permanent replacement" remains unresolved.

 In considering motions for summary judgment, courts must bear in mind that summary judgment is a form of relief which should be applied with caution to the end that litigants be allowed a trial on bona fide factual issues. Smoot v. Chicago, R. I. & P. Co., 378 F. 2d 879 (10th Cir. 1967). Where, as here, inferences are drawn from admitted underlying facts, those inferences must be drawn in the light most favorable to the party against whom the motion is directed and it is the duty of the court to resolve all doubts as to the existence of genuine issues of material facts against the party moving for summary judgment. Technograph Printed Circuits Ltd. v. Methode Electronics, Inc., 356 F.2d 442 (7th Cir.), cert. denied Croname, Inc. v. Technograph Printed Circuits Ltd., 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966). These basic principles governing the use of summary judgment were not complied with by the district court.

---

2. As a result of the long strike and the sagging economy, the Company was able to reinstate only 85 of the pre-strike labor force of 211 active employees. In the Tool Room Department, the post-strike conditions allowed the reinstatement of only four employees. Hinsch was given one of those positions despite a lower seniority level than Cinelli, and the other three were filled by reinstated strikers having greater seniority than Cinelli.

Basic to the decision below is the court's conclusion that Hinsch was not in fact a "permanent replacement." The arbitrator did not reach the question of Hinsch's status as an employee vis-à-vis other employees. The only question submitted to arbitration, as stated in the Arbitration Award and Opinion, was:

[W]as . . . Cinelli . . . discharged for good cause and/or should [he] be reinstated.

The express terms of the award are:

Discharge of . . . Cinelli is overruled and converted to a disciplinary suspension which shall end no later than the close of business November 27, 1970.

It is clear that the award does not deal with Cinelli's right to reinstatement as a compensable employee in the position now occupied by Hinsch. There is nothing in the award which aids in resolving that question. Similarly, we find nothing in the arbitrator's affidavits, which accompanied both sides' motions for summary judgment, which illuminates the issues of Hinsch's present employment status.

■ From the record before us it is impossible to determine whether Hinsch actually returned to work as a permanent replacement for Cinelli or whether he merely returned to his pre-strike position. If Hinsch returned to his old job or took the position of one of the many employees who could not be reinstated because of the damaged economic position of the Company, he does not qualify as a "permanent replacement" and is not entitled to occupy the disputed position. See N. L. R. B. v. Mackay, *supra,* 304 U.S. at 346, 58 S.Ct. 904.

■ We think that the Supreme Court in using the term "permanent replacement" in *Mackay*—to describe those employees, hired during the strike, who would be protected from displacement by returning strikers—meant to restrict protection to those individual employees who actually replaced strikers in the jobs previously held by corresponding individual strikers. In *Fleetwood,* on authority of *Mackay,* the Court pointed out one example of a legitimate and substantial business justification for refusing to reinstate striking employees, that is, "when the jobs claimed by the strikers are occupied by workers hired as permanent replacements during the strike in order to continue operations." 389 U.S. p. 379, 88 S.Ct. p. 546. The *Mackay* exception to Section 2(3) of the National Labor Relations Act, however, was not intended to give an employer discretion as to which strikers he would reinstate in the jobs that were filled during the strike.

We recognize that employers during an economic strike are often forced to reorganize both their work forces and means of production in order to continue in business. We cannot, however, by our decision here, extend the *Fleetwood* rule to permit employers after an economic strike to refuse reinstatement to strikers when the jobs claimed by them are not "occupied" by employees hired as "permanent replacements" during the strike. Failure to require proof in the case before us that Hinsch occupies the job previously held by Cinelli could serve as an invitation to employers to abuse the right—to protect their business during a strike—by pretextual "permanent replacement" in disregard of employees' rights expressed in Section 2(3) and Section 13 of the Act, as interpreted in *Mackay* and *Fleetwood.*

It was incumbent upon the Company to prove that Hinsch was a "permanent replacement" in Cinelli's job, N. L. R. B. v. Great Dane Trailers, *supra,* 388 U.S. at 34, 87 S.Ct. 1792; *Fleetwood Trailer, supra* 389 U.S. at 378, 88 S.Ct. 543. The district court by granting the Union's motion for summary judgment denied the Company an opportunity to present its evidence on that issue.

We reverse the summary judgment and remand the cause for a determination of this pivotal factual question.

Reversed and remanded.

PELL, Circuit Judge (dissenting).

I agree with the majority that the arbitrator's decision did not reach the issue before us. I further agree with the majority that summary judgment should not have been entered for the union by the district court. Beyond that point, however, our paths part. In my opinion, and respectfully to that expressed by the majority, there was no genuine issue of material fact and summary judgment should have been entered for Clark.

The majority sends the case back for a determination of whether Hinsch was a permanent replacement in Cinelli's job. I fail to find any real dispute about this. He did not take Cinelli's particular job. Hinsch, when he abandoned the strike during its duration, went back as a regular, permanent employee in the position he had occupied before the strike, that of machinist. Cinelli was a tool and die maker but pursuant to the departmental seniority he could have, under the union contract, in the event of an ordinary lay off, "bumped" Hinsch because of Cinelli's greater seniority. The question here, however, is whether Cinelli's greater seniority entitles him to "bump" Hinsch, who is occupying his machinist position by virtue of his taking employment during the pendency of the strike when Cinelli would not have taken any position in the department.

I find no dispute that the strike had serious consequences for Clark's business. Prior to the strike there were 237 employees on the seniority list. When the strike ended in June 1970, there was work for only 85 persons. Nine months later, employment had actually dropped to 75 persons. At the time the strike ended, there were only three open positions in the department in question, one tool and die maker, one mold maker, and one machinist, being one in addition to that already occupied by Hinsch who was regularly so employed before the strike's end. The first three positions were filled by employees who had greater seniority than Cinelli. Clark concedes Cinelli's status as an employee following the arbitrator's decision and states that he will be entitled to an offer of employment within the department on the occasion of a vacancy occurring therein. Clark contends, however, and correctly so in my opinion, that until such a vacancy occurs, either because of one of the present employees being no longer employed or because of an increase in the work force, Cinelli cannot replace the three employees with greater seniority and should not replace Hinsch, who took permanent employee status during the course of a strike thereby acquiring the protective mantle recognized in cases such as N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), and N. L. R. B. v. Fleetwood Trailer Co., Inc., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967).

I do not find any controlling authority squarely in point and to that extent the case is one of first impression. However, the rationale which produced the *Mackay* and *Fleetwood* exception to the immediate reinstatement requirement seems to me to be clearly applicable here. That rationale is well stated in the majority opinion:

> "In this situation, the employer's interest in continuing his business during an economic strike coupled with the necessity of offering the inducement of permanent employment to secure employees willing to violate a picket line justify the exception of the reinstatement requirement."

Clearly, Clark had the interest in continuing its business during a crippling strike and it seems equally patent that the company would have encountered great, if not insuperable, difficulty in inducing prospective employees, whether striking employees or outsiders, to take jobs in the strike-bound plant which would necessitate violating the picket line, in the absence of some assurance of job security vis-à-vis striking employees at the time of the discontinuance of the strike. If Hinsch did not have this protection, we have the anomalous situation that Clark could have employed four rank outsiders to permanent positions,

**700**

all of whom would have had protected employment rights insofar as strikers returning after the strike were concerned, but that Hinsch, already an employee, would be displaced as soon as a striker with greater seniority attempted to return to work. As the Supreme Court stated in *Mackay, supra,* 304 U.S. at 345, 58 S.Ct. at 911, "it does not follow that an employer, guilty of no act denounced by the statute, has lost the right to protect and continue his business by supplying places left vacant by strikers." That is exactly what Clark did here, and Hinsch who supplied one of those places should be entitled to the same protection as the outsider. Clark should not be "bound to displace men hired to take the strikers' places in order to provide positions for them." *Mackay, supra* at 347, 58 S.Ct. at 911.

However, once a striking employee has returned to work it would appear that he would only occupy his rightful niche in the seniority scheme in the event of a subsequent economic lay off, but until he does return, his seniority should be no basis for displacing a person accepting employment during the course of an economic strike. N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963).

While I earlier herein indicated my opinion that this is a case of first impression, the cases present factual situations implying support for the position taken in this dissent. Thus, in *Erie Resistor,* the question before the Supreme Court was whether it was an unfair labor practice to offer replacements of strikers super-seniority, 20 years in that case. The Court held that *Mackay* should not be extended that far, although Mr. Justice Harlan in a concurring opinion ventured that a shorter period of extra seniority might not be outlawed in the situation of replacing strikers. What is significant in *Erie Resistor,* as far as the present case is concerned, is that the company's super-seniority inducement to employment was extended both to new employees and to employees on strike. A substantial number of strikers did in fact start work before the strike terminated along with some new employees. The Supreme Court gave no indication that the strikers who returned to work during the strike were any less protected than the new employees, merely that none of them were entitled to super-seniority.

I would hold that Cinelli was not entitled to reassume his employment, as contrasted to his continuing employee status, until a vacancy occurred. "If and when a job for which the striker is qualified becomes available, he is entitled to an offer of reinstatement." *Fleetwood, supra* 389 U.S. at 381, 88 S.Ct. at 547. That entitlement, however, should not begin before the existence of a vacancy, and here there has been none because of the legitimate and substantial business justification of continuing the business during a strike.

For the reasons herein set forth, I would reverse, with the district court directed on remand to enter summary judgment for Clark.