**PEOPLES OUTFITTING COMPANY, INC., Plaintiff-Appellant,**

v.

**GENERAL ELECTRIC CREDIT CORP., INC., Defendant-Appellee.**

**No. 76–1146.**

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1976.
Decided Feb. 17, 1977.

Marvin Mitchell, Indianapolis, Ind., for plaintiff-appellant.

Harry T. Ice, Indianapolis, Ind., for defendant-appellee.

Before CLARK, Associate Justice,* SPRECHER, Circuit Judge and CAMPBELL, Senior District Judge.**

WILLIAM J. CAMPBELL, Senior District Judge.

Plaintiff-Appellant Peoples Outfitting Company, Inc. (Peoples) appeals an order of the district court granting summary judgment in favor of defendant-appellee General Electric Credit Corp. (GECC). Peoples alleged in a five-count complaint breaches of both oral and written contract, intentional interference with prospective business advantage and fraud. We affirm the granting of summary judgment in favor of GECC on the fraud count; we reverse and remand on the contract counts.[1]

The record in this case indicates that Peoples operates a retail furniture store in Indianapolis, Indiana, and that GECC is a New York corporation engaged in the business of buying retail credit sales accounts at a discount from retail establishments. On July 6, 1970 the parties executed a document purporting to establish a business arrangement. On this date, Peoples' President Hester indicated to GECC's District Sales Manager Bundy that he wanted certain paragraphs of the printed form entitled "Agreement, Non-Recourse Plan" deleted, and that he desired certain prior letters addressed to him from GECC to be made a part of the final agreement. Pursuant to his wishes, certain paragraphs

were lined out of the printed agreement. Bundy then wrote after the last paragraph of the printed form: "See agreement letters for other representations". Having initialed this writing, Bundy and Hester executed the agreement, back dating the effective date to July 1, 1970. Copies of the "Letter Agreements" were physically attached to the printed form agreement.

The "Letter Agreements" consist of two letters addressed to Hester from Bundy. The first, dated October 29, 1969, contains the handwritten words "Acceptable Range 17–18% of Rejects." To the left of these words are the handwritten words "They said our rejects would run" with arrows pointing to the word "Range". The second letter, dated November 25, 1969, contains the following paragraph:

"REJECTS—We feel that the reject percentage will average approximately 17–18% of the number of submitted contracts. This will vary by store location and possibly by season."

The printed form agreement contains the following provisions:

"We [Peoples] desire from time to time to sell you [GECC] conditional sales contracts, lease agreements, chattel mortgages, notes, and other choses in action (hereinafter designated as accounts), arising from the bona fide sale or lease and delivery by us of appliances and equipment (hereinafter designated equipment). In consideration of your purchase of such accounts that are acceptable to you and your paying as the prices you shall from time to time establish, we hereby agree as follows . . ..

". . . Nothing in this agreement shall be construed to obligate us [Peoples] to sell accounts to you [GECC] or to obligate you to purchase such accounts."

On the basis of this language contained in the printed form agreement, the district court concluded that there was no binding

---

* Hon. Tom C. Clark, Associate Justice (Retired), U.S. Supreme Court, is sitting by designation.

** Hon. William J. Campbell, Senior District Judge, U.S. District Court for the Northern District of Illinois, is sitting by designation.

1. No appeal is taken from the summary judgment entered as to Count III of the complaint, charging intentional interference with prospective business advantage.

contract. "Even when coupled with the 'letter agreement' this language neither obligates the plaintiff to sell nor the defendant to buy the credit paper possessed by plaintiff." (Order on Motion for Summary Judgment, December 31, 1975, p. 4).

Our review of the record indicates a genuine issue of material fact with respect to GECC's intent to obligate itself to purchase Peoples' accounts. Hence we find summary judgment inappropriate in this case. Furthermore, we find that the district court erred in construing the documents alleged to establish the contractual basis of the business arrangement.

At the outset we note that summary judgment is to be applied with caution. *International Association of M. & A. W. Dist. No. 8 v. Clark Company,* 471 F.2d 694, 697 (7th Cir. 1972). Further, the granting of summary judgment, while a drastic remedy, is a wholesome one where applicable to the circumstances, and is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial. *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972).

We find that the handwritten words on the October 29, 1969 letter, and the typewritten paragraph of the November 25, 1969 letter, both indicating that GECC's reject rate on submitted credit accounts would be approximately 17 to 18%, present a genuine issue of material fact as to whether or not GECC impliedly intended to obligate itself to purchase those accounts outside the range represented by the reject percentage rate. Issues of intent are particularly inappropriate for disposition under Rule 56. *Staren v. American National Bank and Trust Co. of Chicago,* 529 F.2d 1257, 1261–62 (7th Cir. 1976); *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974); see also 6 Pt. 2 Moore's Federal Practice ¶ 56.17(41–1). In this case, the

printed form agreement and the attached "letter agreements" reflect the parties' understanding that only acceptable accounts would be purchased by GECC. The extent, if any, of GECC's obligation to purchase those accounts should be determined by the trier of fact. By granting GECC's motion for summary judgment, the district court reached a factual conclusion that GECC did not intend to obligate itself to purchase Peoples' accounts. Such a conclusion is improperly reached on a motion for summary judgment.

We also do not agree with the district court's holding that the non-obligation clause of the printed form agreement controls the entire agreement with the result that the contract is unenforceable. The reject percentage provisions contained in the "letter agreements," which we find raise an issue of fact as to GECC's intent to obligate itself to purchase those accounts not within the range expressed by the reject percentage rate, are arguably inconsistent with the non-obligation clause of the printed form agreement.[2] Since the reject percentage provisions are contained in a typewritten letter in one instance and in a handwritten note at the end of a letter in another instance, these provisions would seem to prevail over the arguably inconsistent non-obligation provisions of the printed agreement. See: *State v. Scott Construction Company,* 97 Ind.App. 652, 174 N.E. 429 (1931).

The district court also granted summary judgment in favor of GECC on those counts[3] of the complaint alleging breach of oral contract. At a deposition, Peoples' President Hester testified that any oral conversations between the parties were reduced to writing, and that as far as he could recall, there were no oral agreements between the parties. The district court found that this testimony gives rise to a

---

2. We do not conclude that the reject percentage provisions of the "letter agreements" are inconsistent with the non-obligation clause of the printed form agreement, since there is an issue of fact as to GECC's contractual intent.

3. Count II of the complaint alleges the existence and breaches of an oral contract. Count V alleges the existence of an oral contract as a basis for a "business arrangement", in the context of which plaintiff was defrauded by defendant's misrepresentation.

logical inference that neither party intended to be bound by any oral contract.

 Although the deposition testimony of Hester gives rise to an inference of a lack of contractual intent, such an inference is not conclusive. The record in this case contains several documents which are indicative of an intent on the part of the parties to pursue a business arrangement under an oral agreement. As such, there is a factual controversy as to whether or not the parties intended to be bound by an oral contract. Questions of contractual intent, particularly under the circumstances of this case, are questions of fact which are precluded from determination by means of summary judgment.

 Finally, the district court also entered summary judgment in favor of GECC on the counts of the complaint alleging fraud,[4] finding that Peoples "failed to establish a cause of action for fraud under any allegations of his complaint . . .." We agree with the district court that Peoples' allegations of fraud are legally insufficient under applicable Indiana law, and affirm the entry of summary judgment on those counts alleging fraud.

The complaint specified the alleged misrepresentations made by GECC, charging that GECC intentionally and knowingly misrepresented that:

a. Customers of the plaintiff would be scored for credit evaluation upon the same basis as other accounts of the defendant in the Indianapolis area.

b. Various statements of various officers of the defendant to the effect that the defendant had no intention of discontinuing the business relationship with the plaintiff.

c. Customers of the plaintiff would not be and were not being notified by the defendant that their credit accounts had been sold to the defendant and that the defendant owned said accounts.

d. An Indiana Department of Financial Institutions ruling prevented the defendant from purchasing future offerings of the plaintiff which included pay-offs on accounts other than the defendant's outstanding accounts.

Peoples then alleged its reliance on these misrepresentations and consequent damages.

The alleged misrepresentations, construed in light of the remaining allegations of the complaint, constitute statements of future intent and not representations of past or presently existing fact. As such, they are not actionable under Indiana law, as enunciated in *Sachs v. Blewett,* 206 Ind. 151, 185 N.E. 856 (1933). Peoples urges in this court, as it did below, that the alleged misrepresentations fall within an exception to the *Sachs* rule to the effect that recovery in a fraud action, based upon alleged misrepresentations of future intention, is allowed on equitable principles where the injured party rightfully reposes trust and confidence in a wrongdoer. We find, however, that Peoples has not alleged facts falling within this exception, and agree with the district court that Peoples has failed to state a claim for fraud which is actionable under Indiana law.

Accordingly, the district court's order on motion for summary judgment is affirmed as to those counts alleging fraud, and is reversed and remanded as to those counts alleging breach of contract.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

4. The district judge only dealt with the allegations of fraud in Count IV, which incorporated by reference the allegations of breach of written contract in Count I. Having found no enforceable written contract between the parties, the district court examined the allegations of fraud as if no contractual duties existed between the parties. Count V contains allegations of fraud identical to those in Count IV, but in connection with a business arrangement pursuant to an oral contract. The district court disposed of these allegations of fraud by finding no intent on the part of either party to be bound by an oral contract. Since we reverse the district court's entry of summary judgment on both contract counts, we examine the allegations of fraud in light of a business relationship alleged to exist pursuant to a contract, either written or oral.