Alfred B. FREEMAN, Plaintiff, Counter Defendant,

v.

HAMMOND CORPORATION, Defendant, Counter Plaintiff.

No. 71 C 2758.

United States District Court, N. D. Illinois, E. D.

May 18, 1978.

Dressler, Goldsmith, Clement, Gordon & Shore, Ltd., Chicago, Ill., for plaintiff, counter defendant.

Neuman, Williams, Anderson & Olson, Chicago, Ill., for defendant, counter plaintiff.

## MEMORANDUM OPINION

ROSZKOWSKI, District Judge.

Plaintiff is an inventor who brings this action under the patent laws, 35 U.S.C. § 281, alleging infringement by the defendant, Hammond Corporation (hereinafter "Hammond") of U.S. Letters Patent No. 3,548,066 (claims one through three) and U.S. Letters Patent No. 3,711,618 (claims twenty-seven through twenty-nine). Plaintiff, Alfred B. Freeman, (hereinafter "Freeman") seeks an injunction against the sale of those products which allegedly infringe on the patents, and damages. Jurisdiction is based on 28 U.S.C. § 1338(a) in addition to diversity of citizenship under 28 U.S.C. § 1332(a).

Hammond, a Delaware corporation doing business in Chicago, denies infringement and argues affirmatively that the plaintiff's patents are invalid due to anticipation and obviousness. Hammond has filed a counter-claim against Freeman requesting payment of attorney's fees and costs incurred in this litigation. Currently pending before the court is the defendant's motion for summary judgment under Fed.R.Civ.P. 56. For the following reasons, the motion is denied.

## THE NATURE OF THE PLAINTIFF'S INVENTIONS

The subject matter of Freeman's patents is the improvement in the operation of electronic organs. In the traditional method of playing the organ, a chord is sounded by a musician simultaneously depressing two or more keys, and bass notes are sounded by depressing foot pedals. Freeman contends that by virtue of the invention contained in the '066 patent, when a musician depresses two or more keys electronic circuitry makes an appropriate bass note selection, and thereafter signals are produced within the electronic musical instrument for the bass notes one at a time in turn to drive a speaker in an electronically produced rhythmic pattern. In other words, bass notes are played "automatically" by virtue of the invention described in the '066 patent.

In relation to the invention contained in the '618 patent, called "automatic harmony apparatus", Freeman contends that the actuation of a *single* playing control by the musician causes electronic selection of a set of signals constituting a chord and bass notes. The selected signals are then produced in rhythmic patterns to drive an output system.

Hammond argues that the two inventions which form the basis of this action are "obvious" and were "anticipated" by prior art. These contentions are considered separately.

## I.

## OBVIOUSNESS

■ Although patent validity is essentially a matter of law, the defense of obviousness under 35 U.S.C. § 103

. . . lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. *Graham v. John Deere,*

383 U.S. 1, at 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

This language has been interpreted in the Seventh Circuit to mean that "the ultimate question is whether a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem." *Gass v. Montgomery Ward and Co.,* 387 F.2d 129, 130 (7th Cir. 1967).

■ We do not know the "ordinary level of skill" of such a hypothetical person, especially in the complex field of design and improvement of sophisticated electronic organs. Nor are we permitted to speculate as to what this person's solution to the problem might be. This factual issue must be explored at trial, where the finder of fact will be able to observe and assess the credibility of expert testimony. Summary judgment is, of course, improper unless all factual issues are resolved in favor of the movant, and in this instance, the question of obviousness is dependent on further factual determination. Therefore, the motion for summary judgment on the grounds of obviousness is denied.

## II.

## ANTICIPATION

■ An invention must be novel to be patentable, 35 U.S.C. § 102(a), and the defendant contends that neither of the plaintiff's patents are novel as both are anticipated by two prior patents and a device known as the Rhythm-aid, which is an attachment to the S–6 Chord Organ manufactured by the defendant.

■ However, "[a] previous patent, printed publication or domestic product anticipates a purported invention only where, except for insubstantial differences, it contains all of the same elements operating in the same fashion to perform an identical function." *Popeil Bros., Inc. v. Schick Electric, Inc.,* 494 F.2d 162, at 164 (7th Cir. 1974). Therefore, a comparison must be made between the patents in issue and the prior art, and a threshold consideration to

that inquiry is the scope of the examination of the plaintiff's patents.

## A.

## CLAIM CONSTRUCTION

■ The defendant contends that the examination of the plaintiff's patents must be limited to the claim language, and that claims may not be altered by reference to the specifications. *White v. Dunbar*, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303 (1886). However, in *White* the Court went on to say that the specifications may be referred to for the purpose of better understanding the meaning of the claims. 119 U.S. at 51, 7 S.Ct. 72. More recently the Supreme Court has recognized that the complexity of modern patent claims necessitates construction in light of the specifications. *United States v. Adams*, 383 U.S. 39, at 48, 86 S.Ct. 708, 15 L.Ed.2d 572 (1965).

Therefore, in comparing the Freeman patents with the prior art, the claims of the '066 and '618 patents must be construed in light of their specifications.

## B.

## COMPARISON WITH THE PRIOR ART

With the defendant's S–6 Chord Rhythm-aid combination, melody or harmony notes are played on the keyboard of the instrument and three or four pre-selected notes are sounded by depressing a single chord button with the left hand and accented by actuating a chord bar with the left palm to give a momentary increase in the volume of the selected chord. The bass noted (the root and fifth interval of the chord sounded several octaves lower) are played individually by two pedals. The Rhythm-aid is a mechanical device which automatically sounds the bass notes and the accents in one of seven pre-selected patterns without the use of the pedals or the chord bar. The defendant's S–6 Chord organ with the Rhythm-aid attachment still requires the operator of the instrument to use two different types of controls, in specific, keys with the right hand and chord buttons with the left.

The exact nature of the operation of an instrument produced under the '066 and/or '618 patents is unclear due to the absence of a working model and the mention of several modes of use in the '066 patent. However, the '066 patent seems to describe a keyboard electronic instrument which incorporates the invention in one of several ways. One mode allows the musician to play a chord on the keyboard, by depressing four keys simultaneously, and the instrument will sound, in addition to that chord, its root and fifth interval as bass notes in a rhythmic pattern. This is done without requiring the musician to actuate other types of controls. In addition to this, a second mode of operation would sound, as bass notes, all the tones of the chord played on the keyboard, thus automatically playing a more complex "walking" bass. Yet another variation involves sounding the root and fifth bass notes in response to a single pedal which is operated for each chord change.

In the '618 patent, the plaintiff describes a device which will play chords and bass notes automatically in response to a melody played on the keyboard of the instrument.

In scrutinizing the patent claims alone, there does not seem to be a clear cut distinction between the plaintiff's invention and the prior art. The defendant's S–6 organ, relied upon by the defendant as anticipatory prior art, can be excluded or included by the claim language of the '066 and '618 patents depending on the interpretation of the phrase "set of controls." However, in interpreting this phrase, the specifications indicate the phrase refers to the keyboard only (column 1, lines 33–37). There is also language that tends to show that "set of controls" could mean pedals or other controls. (column 1, line 59).

Although the specifications are somewhat contradictory, the contradiction itself leads to a factual inference, one interpretation of which is that the proper construction of the critical phrase "set of controls" is that it refers to a keyboard, which thereby distinguishes the patents in issue from the prior

art. Since all factual inferences must be construed against the movant in a motion for summary judgment, it cannot be said that there is no genuine issue as to any material fact concerning the claims of the '066 and '618 patents and the relationship between the plaintiff's invention and the prior art described by the defendant. These questions can be resolved only after a trial on the merits, where the fact finder will be aided by expert testimony which describes not only what the claimed invention can do musically but also how it does it electronically. The motion for summary judgment on the grounds of anticipation by the S-6 chord organ is, therefore, denied.

■ We feel that it is inadvisable for a court to attempt resolution of highly complex and technical issues on a motion for summary judgment. Although there is no hard and fast rule against the use of summary judgment in patent cases, a court should grant the motion only if it understands the subject matter of the case and feels no necessity for an expert's explanation or an in-court demonstration. *See, e. g., Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 356 F.2d 442, 447–448 (7th Cir. 1966), *cert. denied,* 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547. We do not believe this is such a case.

### C.

### THE MAYNARD 3,546,355 PATENT

Hammond also contends that Freeman's '066 patent is invalid under 35 U.S.C. § 102(e) due to U.S. Letters Patent No. 3,546,355 filed June 24, 1968, by inventor Fred B. Maynard and issued December 8, 1970, to Maynard's assignee, Motorola, Inc. Freeman and Motorola were involved in interference No. 98,019 declared in the U.S. Patent Office between Freeman's application for reissued letters patent and Maynard's '355 patent to determine whether Freeman or Maynard was the prior inventor of the subject matter set forth in certain claims common to both Freeman's application and Maynard's patent. (Freeman reissue application claims 37–44 and Maynard

claims 1–8, '355). The Board of Patent Interferences in the Patent Office awarded priority of these claims to Motorola (Maynard's assignee).

■ Freeman has filed an action in this court against Motorola, 75 C 1644, under 35 U.S.C. § 146 seeking to overturn the award of priority to Motorola. Until the decision in *Freeman v. Motorola,* currently pending in this Court, resolves the issues pertaining to priority of inventorship of the interference counts it would be inappropriate to determine what portions of the Maynard patent might be prior art against Freeman's patents. The question of whether the '066 claims involved in the present action (claims 1–3) are unpatentable over the interference counts (Maynard '355 claims 1–8) involves issues of material fact which must be resolved at trial.

For the reasons set forth, summary judgment is hereby denied.