## AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Plaintiff,

v.

## UNITED AIR LINES, INC., Defendant.

### No. 85 C 4765.

United States District Court,
N.D. Illinois, E.D.

Sept. 5, 1985.

Stephen P. Sawyer, Robert P. Casey, United Air Lines, Inc., Elk Grove Tp., Ill., Joel H. Kaplan, Valerie J. Hoffman, Gary S. Kaplan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

Michael Abram, Cohen, Weiss and Simon, New York City, Michael Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

### ORDER

BUA, District Judge.

Before the Court are motions filed by both ALPA and United to amend the Court's August 1, 1985 Order, 614 F.Supp. 1020. Also pending is a joint stipulation to amend submitted by the parties. For the reasons stated below, plaintiff's motion to amend is denied and defendant's motion is granted.

ALPA seeks to amend the Court's Order to include an award of back pay for the Group of 500 student pilots ordered reinstated by the Court on August 1, 1985. United seeks to amend the Court's Order, which required "immediate" reinstatement of the Group of 500, to allow United to place the Group of 500 on a preferential hiring list and reinstate Group members as positions become available in the future. United argues that the Group of 500 were permanently replaced during the strike and therefore should not be immediately reinstated to their former positions. United estimates that if Group members are placed on a preferential hiring list, all of the Group of 500 will be hired by August of 1986.

ALPA's arguments in support of its motion and in opposition to United's motion are without merit. First, the pilots' strike was neither "caused" nor "prolonged" by an unfair labor practice by United. Although the Court has found that United violated the RLA by its treatment of the Group of 500 and its attempt to rebid the airline, those violations were not sufficient to constitute an unfair labor practice strike. Although United's positions on these two issues undoubtedly "aggravated" the strike, they did not "prolong" it, as that term is defined. *See Allied Industrial Workers Local No. 289 v. N.L.R.B.*, 476 F.2d 868, 882 (D.C.Cir.1973). *See also Road Sprinkler Fitters Local No. 669 v. N.L.R.B.*, 681 F.2d 11, 20 (D.C.Cir.1982); *N.L.R.B. v. Moore Business Forms*, 574 F.2d 835, 840 (5th Cir.1978); *N.L.R.B. v. Jackson Press, Inc.*, 201 F.2d 541, 546 (7th Cir.1953). Three other issues, in addition to the Group of 500 and the rebid, separated the parties following the tentative agreement on the economic package. See August 1, 1985 Order, Finding of Fact ¶ 71.

Furthermore, United has not waived its right to raise the permanent replacement defense. First, the Smith affidavit, which is uncontradicted, is not new evidence but merely updates and clarifies testimony given at trial. Second, United argued before, during and after trial that it had the right to hire and retain permanent replacements in response to the strike. United's failure to advance the permanent replacement issue with reference to the Group of 500 is understandable given that it was not until the Court issued its August 1 Order that the Group of 500 were first considered employees of United. Since there was sufficient evidence at trial to support United's permanent replacement defense even without the later-filed Smith Affidavit, ALPA was not unfairly prejudiced by United's post-trial permanent replacement argument. ALPA does not contest the accuracy of the evidence, but rather argues that the Group of 500 should be reinstated de-

spite their permanent replacement because of an unfair labor strike. The unfair labor strike issue, however, was raised at trial and is now rejected by the Court. Since the Group of 500 were properly replaced during the strike, they are not entitled to back pay, but rather back-dated seniority and preferential hiring in the future.

Accordingly, the Court's August 1, 1985 Order is amended. Finding of Fact 82 is amended as follows (bracketed text is deleted and underscored text is added):

82. United expects to expand and will need additional pilots. Tr. 121, 551. [United has already offered second officer jobs to nearly 700 additional pilots, of whom only about 300–350 entered training during the strike. Tr. 246–47.] *Beginning on or about May 17, 1985 and continuing thereafter during the strike, United made offers of permanent employment to replacement pilots, 539 of which offers were accepted prior to the end of the strike. Tr. 246–48; Smith Affidavit, ¶ 2. Out of the 539 offers, 267 permanent replacements entered training during the strike. Smith Affidavit, ¶ 3. Although 114 of the permanent replacements have yet to begin their training, the delay in commencement of their training is due to the fact that United's training facilities have been utilized to their maximum capacities.* The remaining pilots would enter training after the strike was settled. Nonetheless, United's position as expressed to the Court is that it will not employ any of the Group of 500 who refused to cross the picket lines during the strike. Tr. 56. United's policy is that "this Group of 500 will not be employed by United." Tr. 121. The only possible exception to this policy is that if the individual did not report on May 17 due to "personal hardship" or "extenuating circumstances," he or she would be "offered employment." Tr. 251. United, however, will not consider those who failed to report on May 17 "if their reason for failing to show up for work was a refusal to cross the picket line." Tr. 366.

The following Conclusions of Law are added immediately following Conclusion of Law 24:

24a. Although the "Group of 500" were employees of United on May 17, 1985, beginning on that date and continuing through the strike United lawfully hired 539 permanent replacements for the striking members of the Group of 500. *See Brotherhood of Ry. and Steamship Clerks v. Florida East Coast Ry. Co.,* 384 U.S. 238, 244 [86 S.Ct. 1420, 1423, 16 L.Ed.2d 501] (1966); *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345–46 [58 S.Ct. 904, 910–11, 82 L.Ed. 1381] (1938); *Flight Engineers Int'l. Ass'n. v. Eastern Airlines, Inc.,* 359 F.2d 303, 310–11 (2d Cir.1966); *Air Line Pilots v. Southern Airways,* 49 L.R.R.M. 3145, 3152 (S.D.Tenn.1962). Permanent replacements hired from outside the company, unlike striking pilots who cross over, need not actually begin working in order to retain their jobs following the conclusion of a strike. *Cf. N.L.R.B. v. Cutting, Inc.,* 701 F.2d 659 (7th Cir.1983) *with International Assoc. of Machinists v. J.L. Clarke Co.,* 471 F.2d 694 (7th Cir.1972). *See also H. & F. Binch Co. v. N.L.R.B.,* 456 F.2d 357, 362 (2d Cir.1972).

24b. An employer may refuse to reinstate strikers if the employer establishes that replacements for the strikers were hired on a permanent basis before the employer received the strikers' offer to return to work. *Cutting, supra,* 701 F.2d at 662. Although the replacement worker must have accepted the company's offer of permanent employment, "actual arrival on the job should not be required if an understanding has been reached that this will occur at a reasonably early date." *H. & F. Binch Co., supra,* 456 F.2d at 362.

United need not displace the 539 permanent replacements to create positions for members of the Group of 500 who elected to honor ALPA's picket lines. *Mackay Radio, supra,* 304 U.S. at 345–46 [58 S.Ct. at 910–11]. Rather, the latter group of employees are entitled to pref-

erential reinstatement for all positions which become available in the future. *See N.L.R.B. v. Fleetwood Trailer Co.,* 389 U.S. 375, 381 [88 S.Ct. 543, 547, 19 L.Ed.2d 614] (1967). United presently estimates that it will be able to offer reinstatement to all members of the Group of 500 before August of 1986.

Conclusion 5(a) is amended as follows (bracketed text is deleted and underscored text is added):

5(a) directed and enjoined to restore the "Group of 500" pilots *and members of the Class of '79* who elected to respect ALPA picket lines to the status of employees *on inactive status,* [and to assign them immediately to line pilot service if they completed their training, and otherwise permit them] *and to accord preferential rehire rights to them whereby they shall be entitled, upon the opening of positions for which they are qualified and upon the completion of their training, to be assigned to line pilot service. Such individuals shall be permitted* to complete their training without discrimination, and then enter line service, with seniority in all cases accrued from May 17, 1985. *Seniority for members of the Class of '79 shall be determined by the adjusted seniority date established by their recall prior to May 17, 1985.*

CONCLUSION

Plaintiff's motion to amend the Court's August 1, 1985 Order is denied. Defendant's motion to amend the Court's August 1, 1985 Order is granted.

IT IS SO ORDERED.